Robert WEINER, et al.

v.

BLUE CROSS OF MARYLAND,
INC., et al.

Civ. No. PN–89–2256.

United States District Court,
D. Maryland.

Feb. 5, 1990.

Larry S. Stewart, and James B. Tilgh-man, Jr., Miami, Fla., Clarence M. Thomas, Timonium, Md., William A. Hahn, Jr., Dur-kee, Thomas, and Hahn, Baltimore, Md., for plaintiffs.

Shale D. Stiller, Leonard E. Cohen, Alan P. Hillman, Peter H. Gunst, Frank, Bern-stein, Conaway & Goldman, H. Russell Smouse, Whiteford, Taylor & Preston, Bal-timore, Md., for defendants Blue Cross of Maryland, Inc., Blue Shield of Maryland, Inc., and Blue Cross and Blue Shield of Maryland, Inc.

## OPINION AND ORDER

NIEMEYER, District Judge.

Plaintiffs Robert Weiner and his family obtained a judgment in the amount of $6.9 million against Blue Cross and Blue Shield of Maryland and related companies (Blue Cross) in the state courts of Florida. The judgment arose out of Blue Cross' failure to pay timely under a health care policy. The judgment, which was entered in September 1986, has been accruing interest at the rate of 12% per annum and now approximates $9.3 million. When the Weiners filed the judgment in the Circuit Court for Baltimore County, Maryland, as part of the first steps toward enforcing it against Blue Cross, Blue Cross removed the action to this Court and filed a motion to vacate the judgment in a collateral attack, contending that the Florida state court had no authority to enter a judgment. It contends that the action was preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* The Weiners moved to remand the action to state court on the ground that a proceeding to enforce a judgment is not an action that is removable under 28 U.S.C. § 1441. Having considered the well-prepared memoranda of the parties and the arguments presented at the hearing on January 12, 1990, the Court will deny both the motion to remand and the motion to vacate.

## I. BACKGROUND

In early 1982 Robert Weiner, Sr., the owner and operator of a gas station in Broward County, Florida, contacted the state association of gasoline retailers known as Allied Gasoline Retailers' Association of Florida (AGRA), which is affiliated with a national group known as Service Station Dealers of America (SSDA), to obtain group health insurance. After joining AGRA, Robert Weiner, Sr. obtained a family policy which covered his wife and two dependent children, Steven and Mark. His third son, Robert Weiner, Jr., who was an employee of the gas station and over the age of majority, obtained an individual policy. The group policy showed SSDA, the national organization, as employer and designated the members as "employees." That policy was never subscribed to by SSDA, but was signed by an insurance agency that marketed group plans for Blue Cross. Members qualified for coverage under the plan so long as they remained employees or until the age of 19 if they were dependents of employees.

In 1982 two sons of Robert Weiner, Sr. suffered tragedies. Steven was diagnosed with AIDS, and he died less than two years later. Mark was rendered a quadriplegic as a result of an automobile accident.

Blue Cross provided payments for medical care under Robert Weiner, Sr.'s policy until August 1983 when it concluded that Steven and Mark were no longer covered. Robert Weiner filed suit one month later to compel continuation of payments and approximately seven months later Blue Cross resumed payments under the policy and reimbursed Robert Weiner for past payments. The parties agree that since March 1984 Blue Cross has paid all contractual obligations under the policy.

The failure of Blue Cross to provide coverage apparently caused the Weiners substantial hardship, and they sued Blue Cross as well as Blue Cross/Blue Shield of Florida, a servicing agent, for state common law claims of fraud, negligence, and intentional infliction of emotional distress. The jury returned verdicts in favor of all plaintiffs and against all defendants on all counts. The plaintiffs were awarded $500,000 in compensatory damages and $5,000,000 in punitive damages against Blue Cross and $200,000 in compensatory and $1.5 million in punitive damages against Blue Cross/Blue Shield of Florida. The trial judge awarded $1.4 million in attorneys' fees which were calculated at three times the lodestar amount. Judgment was entered in September 1986, and under Florida law it bears 12% per annum interest until paid.

The judgment was appealed to the Florida Fourth District Court of Appeal, an intermediary appellate court, where Blue Cross and Blue Cross/Blue Shield of Florida raised for the first time the defense that the health care policy was part of a

plan as defined by ERISA and that therefore the actions were preempted by federal law. They contended that the trial court had no power to enter judgment and that the judgment should be vacated. Alternatively, they requested that the case be remanded to the trial court for a further hearing on the preemption issue. The Florida appellate court rejected the arguments based on the record that had been developed, affirmed the judgment against Blue Cross, but reversed the judgment against Blue Cross/Blue Shield of Florida. *Blue Cross/Blue Shield of Florida, Inc. v. Weiner,* 543 So.2d 794 (Fla.Dist.Ct.App. 1989). The Florida Supreme Court denied a petition for review, and a petition for a writ of certiorari is now pending in the Supreme Court of the United States.

Before the Florida appellate court rendered its decision, Blue Cross filed a suit in the United States District Court for the Southern District of Florida seeking an injunction on preemption grounds. The District Court denied the injunction, relying on the doctrine of abstention. *Blue Cross and Blue Shield of Maryland, Inc. v. Weiner,* No. 88–6290–Ryskamp (S.D.Fla. May 17, 1988). On appeal the Eleventh Circuit affirmed, 868 F.2d 1550, and the Supreme Court denied a petition for writ of certiorari. —— U.S. ——, 110 S.Ct. 239, 107 L.Ed.2d 190 (1989).

The Weiners began enforcement of their judgment by filing it in the Circuit Court for Baltimore County, Maryland, under the Uniform Enforcement of Foreign Judgments Act, Md.Code Ann., Courts and Jud. Proc. Art., § 11–801 *et seq.* Blue Cross removed the action to this Court under 28 U.S.C. § 1441 and filed a motion to vacate the Florida judgment. Alternatively, Blue Cross seeks to have an evidentiary hearing on the issue whether the health care plan issued by Blue Cross was a plan regulated by ERISA, 29 U.S.C. § 1003(a).

After the Florida trial court entered judgment and before the Florida appellate court rendered its decision, the Supreme Court of the United States decided *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) and

*Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). These cases articulated the scope and strength of the preemption of ERISA. Because Blue Cross did not have the benefit of those decisions before the trial, it contends that it has not had the opportunity to try to a fact-finder the issue whether the health care policy issued to the Weiners was regulated by ERISA.

## II. REMOVAL

■ The Weiners have moved to remand this action to the Circuit Court for Baltimore County. They contend that their proceeding in the Circuit Court for Baltimore County to enforce a Florida judgment is not a "civil action" that is removable under 28 U.S.C. § 1441, but rather is an ancillary proceeding to the Florida action, and the time for removing the Florida action has long since passed. *See, e.g.,* 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3721 (2d ed. 1985) at 202 & n. 54 (collecting cases). They also urge that the decisions in *Barrow v. Hunton,* 99 U.S. 80, 25 L.Ed. 407 (1878), and *Eisenhardt v. Coastal Indus., Inc.,* 324 F.Supp. 550 (M.D.Pa.1971), which hold that a motion to vacate a judgment is ancillary to the judgment and therefore not removable, should be dispositive of the question whether proceedings to enforce a judgment are removable.

Under the common law, the procedure to enforce the judgment of one jurisdiction in another required the filing of a new suit in the second jurisdiction to enforce the judgment of the first. The suit on the judgment was an independent action, *see, e.g., Indemnity Ins. Co. of N. Am. v. Smoot,* 152 F.2d 667, 670 (D.C.Cir.1945), *cert. denied,* 328 U.S. 835–36, 66 S.Ct. 981, 90 L.Ed. 1611 (1946), and thus was removable under 28 U.S.C. § 1441. The Weiners point out, however, that rather than pursuing a common law action, they simply filed a copy of the Florida judgment in the Circuit Court for Baltimore County pursuant to the Uniform Enforcement of Foreign Judgments Act, Md.Code Ann., Courts and Jud. Proc. Art., § 11–801 *et seq.* They argue

that the filing of the Florida judgment was not an independent action because the "filed foreign judgment has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying as a judgment of the court in which it is filed." *Id.*, § 11–802(b). Thus, they argue that the Florida judgment filed in the Circuit Court for Baltimore County under the Uniform Enforcement Act is the same as if the judgment against Blue Cross had been originally entered in Baltimore County. Its enforcement, they contend, is an ancillary proceeding and not an independent action that is removable.

Blue Cross contends that the Uniform Enforcement Act does not alter the traditional tests of removability of actions. The judgment was entered in Florida, and the Weiners could only enforce it in Maryland by suing on the judgment in Maryland. The Uniform Enforcement Act, it contends, merely streamlined the process for suing on the judgment.

When originally written, the Uniform Enforcement of Foreign Judgments Act was not intended to alter the rights of debtors vis-à-vis their judgment creditors. As stated in the Commissioner's Prefatory Note to the Uniform Enforcement of Foreign Judgments Act of 1948, "By this act procedure is made available under which the judgment creditor can effectively obtain relief and at the same time *adequate protection is given the judgment debtor to present any defense that can now be interposed to an action on such judgment.*" 9A U.L.A. at 474 (1965) (emphasis supplied). It would thus appear that the Act was designed as a facilitating device. *See, e.g., Jones v. Roach,* 118 Ariz. 146, 575 P.2d 345 (1977) (Uniform Act does not create substantive rights not conferred by the Full Faith and Credit Clause of the United States Constitution but is merely a uniform procedural act by which those rights and defenses afforded under the clause may be enforced or imposed).

When the Uniform Enforcement Act was revised in 1964, the procedure was modified to parallel that established by 28 U.S.C.

§ 1963, which allows a prevailing party to enforce a federal district court judgment by registering it in another federal district. *See* Commissioner's Prefatory Note 9A U.L.A. at 486–87 (1965). Registration pursuant to 28 U.S.C. § 1963 is considered "the equivalent of a new judgment of the registration court." *See Stanford v. Utley,* 341 F.2d 265, 268 (8th Cir.1965).

The Uniform Enforcement Act was enacted in Maryland, effective July 1, 1987. Md.Code Ann., Courts and Jud.Proc. Art., §§ 11–801 through 11–807. It provides that a judgment creditor may file with the clerk of a circuit court in Maryland an authenticated copy of the judgment of another state. § 11–802(a). When so filed, the foreign judgment will have the same effect as does a judgment of the circuit court in which it is filed. § 11–802(b). The Act provides for notice to the debtor, § 11–803, and a filing fee, § 11–805. Finally, the judgment creditor is given the alternative procedure of bringing an action to enforce the foreign judgment. § 11–805.

While the Uniform Enforcement Act eliminates the need for filing of a complaint and following other procedures, it does not purport to alter any substantive rights or defenses that otherwise would be available either to the judgment creditor or the judgment debtor if suit were filed to enforce that foreign judgment. Since the judgment debtor would be entitled to remove to federal court an independent action to enforce a judgment that satisfied the provisions of 28 U.S.C. § 1441, the adoption by a state of an act merely to streamline the procedure should not alter the right of removal which was created by Congress. To conclude otherwise allows for the impermissible possibility that state procedural enactments alter federal policy on a state-by-state basis. *See, e.g., Grubbs v. General Electric Credit Corp.,* 405 U.S. 699, 705, 92 S.Ct. 1344, 1348, 31 L.Ed.2d 612 (1972) (removal statute should have "uniform nationwide application"). *See also Colonial Bank & Trust Co. v. Cahill,* 424 F.Supp. 1200, 1203 (N.D. Ill.1976) (creation of new remedy in lieu of judicial proceeding does not preclude removal jurisdiction).

Moreover, to conclude that the removability of an enforcement action is dependent upon whether a complaint or a copy of the judgment is filed celebrates form over substance and confers the option of removability on the plaintiff when Congress intended that option to be exercised by the defendant. *See* 28 U.S.C. § 1441.

The Court concludes that when the holder of a judgment seeks its enforcement in another state, the initiation of that proceeding, by whatever form established by the state, is a civil action as used in 28 U.S.C. § 1441.

The cases of *Barrow v. Hunton*, 99 U.S. 80, 25 L.Ed. 407 (1878), and *Eisenhardt v. Coastal Indus., Inc.*, 324 F.Supp. 550 (M.D. Pa.1971), which are relied on by plaintiffs, do not suggest a different conclusion. Both *Barrow* and *Eisenhardt* involved unsuccessful efforts by debtors to vacate judgments. In *Barrow*, the debtor filed a motion to nullify a judgment in the same court which had issued the judgment. In *Eisenhardt*, the debtor removed the case to federal court and then moved to vacate. No independent actions to enforce the judgments were brought against the debtors; instead, the debtors' motions in the two cases were "merely tantamount to the common law practice of moving to set aside a judgment for irregularity." *Barrow*, 99 U.S. at 83. Thus, the Supreme Court in *Barrow* and the district court in *Eisenhardt* found that the cases should be remanded. In contrast, the judgment creditors in this case are attempting to enforce a Florida judgment in Maryland, a procedure that requires the initiation of an independent action. The Uniform Enforcement Act has not altered this. Accordingly, the motion of plaintiffs to remand will be denied.

### III. THE COLLATERAL ATTACK

Blue Cross contends that the judgment entered against it by the Florida court on state common law causes of action must be vacated on collateral attack because they were preempted by ERISA and the state court therefore had no power to enter judgment. 29 U.S.C. §§ 1144(a) and 1132(e)(1).

They rely on the principles set forth in *Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940) and Restatement (Second) of Judgments § 12 (1982).

It is now well established that in enacting ERISA, Congress preempted state common law causes of action asserting claims under or related to employee welfare benefit plans that are regulated by 29 U.S.C. § 1003(a). *See*, 29 U.S.C. § 1144(a); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Not only are state common law claims preempted by ERISA, but Congress also established the federal courts as the exclusive forum for adjudicating many aspects of ERISA. 29 U.S.C. § 1132(e)(1). Other aspects are authorized by Congress to be resolved by state courts. *See* 29 U.S.C. §§ 1132(e)(1) and 1132(a)(1)(B). Because the claims asserted by the Weiners in this case do not include a claim to recover benefits due to them under the plan (issues which are triable in state courts), the parties agree that if the plan involved here was one regulated by ERISA, ERISA would preempt all state causes of action and only a federal court could adjudicate the claims.

■ ERISA preemption is not merely a defense which may be waived. Rather, it is jurisdictional and deprives the state court of the power to adjudicate. The preemptive force is of such power that the state law is displaced, state jurisdiction is extinguished, and any judgment entered is void *ab initio*. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. at 54–56, 107 S.Ct. at 1556–57; *cf. International Longshoremen's Association v. Davis*, 476 U.S. 380, 388–93, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986) (NLRA preemption). Accordingly, if a state court attempts to default an ERISA claim on a procedural basis, such as the fact that preemption was not raised as an affirmative defense, any judgment entered will nevertheless be a nullity. Similarly, as an exception to the rule that an affirmative defense based on a federal ground ordinarily will not support removal of state causes

of action to federal court, the force of preemption under ERISA will support removal. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. at 63–67, 107 S.Ct. at 1546–48.

It is these principles, which are not disputed by the parties, on which Blue Cross relies to urge that the judgment entered against it by the Florida court on state common law causes of action must be vacated on collateral attack. These contentions, however, are grounded on the assumption that the plan involved in this case was regulated by ERISA as defined by 29 U.S.C. § 1003(a).

The plaintiffs contend that the group policy issued by Blue Cross to Robert Weiner, Sr. was not a plan as regulated by ERISA and that the principles of preemption do not apply. They contend that a full record was developed during trial in the Florida trial court which shows that Robert Weiner, Sr. bought a group policy for his family through a marketing device developed by Blue Cross and that there was no plan adopted by an employer or group of employers for employees. The Weiners contend that the record supports the following factual conclusions:

> While the insurance Mr. Weiner purchased from [Blue Cross] purported to be part of a plan established by the Service Station Dealers of America ("SSDA"), an association of employers, it turned out this was just a fraudulent marketing scheme. The group policy was really established and maintained by [Blue Cross] and Associated Financial Services, Inc. ("AFSI"), an insurance broker, to target a perceived market niche. SSDA was never consulted about the plan, it never gave Blue Cross permission to use its name, and its signature was actually forged on the insurance contracts that made up the plan. The decision to limit coverage to service station dealers and their employees was an "underwriting decision" made by [Blue Cross] and AFSI. It was not an ERISA driven decision made by an employer or association of employers.
>
> Twelve days after the insurance contracts were forged, an endorsement was issued to the policies eliminating SSDA and its affiliates as both the contracting party and as the insured group. AFSI, the insurance broker, was substituted in SSDA's place. Thereafter, contrary to [Blue Cross'] position, the testimony and documentary evidence introduced at trial showed that no further agreements or endorsements, with the Allied Gasoline Retailers Association of Florida ("AGRA") or any other entity, were made or obtained.
>
> The group insurance policy was then marketed as an SSDA plan, but it was nothing more than an arrangement between two entrepreneurial businesses to sell insurance. It was never established or maintained by an employer or association of employers, and in keeping with its true nature no attempt was ever made to comply with ERISA's reporting requirements.

Memorandum in Support of Plaintiffs' Motion to Strike at 6–7 (footnote omitted). The plaintiffs urge that under the criteria described in *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982), the health insurance issued to the Weiners is not part of an employee benefit welfare plan and ERISA does not apply.

With equal confidence, Blue Cross asseverates that the plan is an employee welfare benefit plan under ERISA. It notes that Robert Weiner, Jr. (who is not only the son but the employee of Robert Weiner, Sr. and who would not qualify as a dependent under a family policy) had an individual policy issued under the plan to him. Blue Cross notes that the plan only allowed employees to be members, and upon termination of an employee, the insurance terminated. Blue Cross argues that SSDA and its Florida affiliate, AGRA, are bona fide employer organizations. It contends that the record supports the following contentions:

> In summary, the undisputed facts show that under ERISA, the Department of Labor ERISA Regulations, the Department of Labor News Release, and judicial decisions, both the AGRA plan and the Weiner Station plan were ERISA benefit plans as a matter of law: the AGRA plan at the association level, and

the station plan at the individual employer level. Further, two experienced executives of firms in the business of administering association group plans have unequivocally stated in their affidavits that the AGRA plan was an ERISA benefit plan.

\* \* \* \* \* \*

The group insurance was not available to service stations in Florida until AGRA joined the overall plan; Robert Weiner, Sr. was told that Weiner Service Station would have to join AGRA before insurance would be available to the Station's employees; and the station joined AGRA in order to obtain group insurance.... In fact, when asking about and applying for the insurance, Mr. Weiner dealt exclusively with a field representative of AGRA and not with a representative of AFSI.

Reply Memorandum in Support of Defendants' Motion to Vacate at 40–41, 42.

Although the facts relating to the underwriting and subscription of the plan were developed at the trial court level, the issue whether the plan was an ERISA plan was never presented to the trial court for resolution by Blue Cross. It was raised and briefed on appeal. The Florida appellate court ruled that the plan was not an ERISA plan. It stated:

Maryland's [Blue Cross'] principle assertion on appeal is that there is a lack of jurisdiction over the subject matter because the plaintiffs' claim is preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001–1461, ("ERISA"), and that state courts do not have concurrent jurisdiction. *See also Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). However, we find that ERISA does not apply to this policy.

ERISA regulates employee benefit plans, including ones providing for medical and hospital care, if the plan is established or maintained by an employer or employee organization or both. ERISA § 4(a), 29 U.S.C. § 1003(a). Here, the record does not support a conclusion that there was an employee plan. The record

does not reveal any agreement between the service station dealers association and Maryland [Blue Cross] or AFSI. The evidence, although disputed, reflects that the plaintiff here was sole proprietor who simply purchased a group policy for his family. See *Xaros v. U.S. Fidelity & Guaranty Co.*, 820 F.2d 1176 (11th Cir. 1987); *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982); *Taggart Corp. v. Life and Health Benefits Administration, Inc.*, 617 F.2d 1208 (5th Cir.1980). Here there was no plan, or even an informal agreement, established or maintained by an employer or an employee organization. Nor were any fiduciary responsibilities created by this insurance marketing scheme, which simply made group insurance available to members of the organization.

*Blue Cross/Blue Shield of Florida, Inc. v. Weiner*, 543 So.2d 794, 798 (Fla.Dist.Ct. App.) (review denied by the Fla. Supreme Court, pet. for cert. pending in the U.S. Supreme Court).

In view of the foregoing, the plaintiffs contend that the Florida courts had the power to resolve the facts and thereby determine their own jurisdiction; that the decision of the state court that the plan was not an ERISA plan is a final judgment entitled to preclusive effect under the principles of res judicata; and that judgment on the issue of subject matter jurisdiction is not subject to collateral attack.

Although Blue Cross recognizes that in ordinary circumstances the judgment of a state court should be given res judicata effect by a federal court, *see* 28 U.S.C. § 1738, it argues that this judgment falls within that narrow range of matters where principles of federal policy supersede the principles of res judicata. It relies on Restatement (Second) of Judgments § 12 and *Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940), and the statements made by Professors Wright and Miller. See 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3536 at 539–40 (2d ed. 1984), which reads:

[W]hen a federal statute has vested exclusive jurisdiction of a particular type of

case in the federal courts, the finding by a state court that it has jurisdiction over such a case will not preclude collateral attack upon the judgment rendered in the state court.

*See also* 18A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4428 at 283–85 (1981) (violations of exclusive federal jurisdiction may leave a state judgment vulnerable to collateral attack). It argues that Professor Moore's treatise also supports their position when he says that "if taken as absolute, [res judicata] might occasionally result in a serious interference with constitutional or statutory allocations of power. As a consequence, it has been held … that competing considerations dictate that collateral attack on jurisdictional grounds be permitted." 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.405[4.—1] at 214–15 (2d ed. 1989).

The issues presented raise sensitive questions of federalism that require balancing on the one hand principles underlying the Supremacy Clause and on the other hand the proper recognition of power reserved to the states under the Tenth Amendment.

There can be little doubt that state courts retain a competency to determine issues of federal law and that, as Congress has from time to time resolved, they actually participate in the resolution of issues of federal law. Likewise federal courts resolve issues of state law. The federal and state courts together function as a system, coordinated by sophisticated principles of federalism. As observed by Alexander Hamilton in *The Federalist*, No. 82, at 491, 493 (C. Rossiter ed. 1961):

'Tis time only that can mature and perfect so compound a system, can liquidate the meaning of all the parts, and can adjust them to each other in a harmonious and consistent WHOLE.

       \*     \*     \*     \*     \*     \*

When … we consider the State governments and the national governments, as they truly are, in the light of kindred systems, and as parts of ONE WHOLE, the inference seems to be conclusive that the State courts would have a concurrent jurisdiction in all cases arising under the laws of the Union where it was not expressly prohibited.

Except in a small class of cases where Congress has specified that state courts should not even entertain a federal jurisdictional question, neither federal courts nor state courts control in advance where litigation is filed and they both carry out the important responsibility of channeling cases to the appropriate fora by applying principles of federal-state jurisdiction. It is necessary therefore that a court have the power to define its own jurisdiction and that decisions on those issues be given effect under principles of res judicata in all but a narrow class of cases. *See e.g. Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940). Restatement (Second) of Judgments § 12 (1982). As the Supreme Court noted in *Allen v. McCurry*, 449 U.S. 90, 95–96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980), "res judicata and collateral estoppel not only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has been recognized as a bulwark of the federal system."

Blue Cross argues, however, that there are circumstances, as described in the Restatement § 12, when a court should not give res judicata effect to the prior judgment of state courts. The Restatement states that a court's subject matter jurisdiction can be relitigated if:

(1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or

(2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government. …

Blue Cross urges that those exceptions are applicable here.

When Congress has provided for the automatic ouster of state court jurisdiction such that the question of preemption requires no jurisdictional finding to give it effect, and a state nevertheless proceeds to judgment in conflict with the Congressional

intent, it is apparent that collateral attack is available against that judgment. For example, when a debtor files a bankruptcy proceeding, the state is deprived automatically of its jurisdiction and any further action by the state is not only a nullity but is subject to collateral attack. *Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940). Similarly, when a case is removed under 28 U.S.C. § 1441 from a state court to a federal court, the state court is automatically deprived of jurisdiction to hear the matter unless and until the federal court remands it. If the state court proceeds to judgment after removal, the judgment is a nullity and is subject to collateral attack. *United States v. Ohio,* 487 F.2d 936 (Temp.Emer.Ct.App.1973), *cert. denied,* 421 U.S. 1014, 95 S.Ct. 2422, 44 L.Ed.2d 683 (1975).

In each of these cases the Congress determined that the state courts were preempted from even determining whether federal jurisdiction applied, and the continued exercise by the state court of jurisdiction was so plainly beyond its jurisdiction that it was a manifest abuse of the state's authority to continue. Likewise the exercise in those circumstances by a state court of jurisdiction infringed on the authority of the federal courts on matters preempted not only as to subject matter but as to the appropriate forum for decision.

■ On the other hand when under one set of facts jurisdiction is preempted by federal law and under another it is not, or when under a given set of facts jurisdiction depends on a legal interpretation, a state court has the power, and when confronted with the issue, the duty, to apply federal law and determine the issue of preemption. As the Supreme Court noted in *International Longshoremen's Ass'n, AFL–CIO v. Davis:*

> A claim of *Garmon* preemption [established by *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) ] is a claim that the state court has no power to adjudicate the subject matter of the case and when a claim of *Garmon* preemption

is raised, it must be considered and resolved *by the state court.*

476 U.S. at 393, 106 S.Ct. at 1913 (emphasis supplied, dealing with preemption under the NLRA). The determination by the state court on the issue whether it or the federal court has subject matter jurisdiction will be given res judicata effect on that issue. This holding does not constitute a subversion of the Supremacy Clause but rather is a recognition that judicial power is shared in a dual system of courts under the principles of federalism that were structured by the Constitution. The Supremacy Clause is preserved by judicial review in the Supreme Court and by various other intermediary methods of review established by Congress, such as by removal, 28 U.S.C. § 1441; independent action to recover for civil right's violations, 28 U.S.C. § 1343; and habeas corpus, 28 U.S.C. § 2254. But the care and sensitivity adopted by the federal courts to preserve the rightful balance is preserved in several statutory and judicially adopted doctrines, such as the anti-injunction statute, 28 U.S.C. § 2283; the doctrine of abstention; the *Rooker-Feldman* doctrine (prohibiting appellate review in a federal district court of a state judgment, which is discussed below); and the recognition given to state judgments, 28 U.S.C. § 1738.

■ The power of a state court to participate in the delineation of federal-state jurisdictional issues by applying the doctrine of res judicata to its decisions was affirmed in *Durfee v. Duke,* 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963). In *Durfee* a Nebraska resident brought suit against a Missouri resident in a Nebraska court to quiet title to land situated on the Missouri River, which forms the border between the two states. The Nebraska court had subject matter jurisdiction over the dispute only if the land was in fact part of Nebraska. Whether the land was in Nebraska depended entirely on resolving a factual question—whether a shift in the Missouri River had been caused by avulsion or accretion. *Id.* at 108, 84 S.Ct. at 243. The Missouri resident appeared in the Nebraska court and litigated the question. The Nebraska court found that the land was in

Nebraska and thereupon quieted title in the Nebraska resident. The case was appealed to the Nebraska Supreme Court, which affirmed the trial court. The Missouri resident did not petition the United States Supreme Court to review the Nebraska Supreme Court.

Two months later, the Missouri resident filed suit in Missouri to quiet title to the same land. The suit was promptly removed to federal district court by reason of diversity of citizenship. The district court stated that it thought the land was in Missouri but felt bound by the factual determination made by the Nebraska court. The court of appeals reversed, holding that the normal principles of res judicata were not applicable because land was involved; therefore, the Nebraska judgment was not entitled to full faith and credit. On petition for a writ of certiorari, the United States Supreme Court reversed, affirming the judgment of the district court.

The Supreme Court held that when asked to give effect to a foreign court's jurisdiction, a court may constitutionally inquire into that foreign court's jurisdiction to render judgment. *Id.* at 111, 84 S.Ct. at 245. The general rule to be applied is that "a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Id.* The Court added that "the general rule is no different when the claim is made that the original forum did not have jurisdiction over the subject matter." *Id.* at 112, 84 S.Ct. at 245 (citations omitted).

The Court justified its reasoning by quoting from *Stoll v. Gottlieb*, 305 U.S. 165, 172, 59 S.Ct. 134, 137, 83 L.Ed. 104 (1938):

"We see no reason why a court, in the absence of an allegation of fraud in obtaining the judgment, should examine again the question whether the court making the earlier determination on an actual contest over jurisdiction between the parties, did have jurisdiction of the subject matter of the litigation....

Courts to determine the rights of parties are an integral part of our system of government. It is just as important that there should be a place to end as that there should be a place to begin litigation. After a party has his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined. There is no reason to expect that the second decision will be more satisfactory than the first." 305 U.S. at 172, 59 S.Ct. at 137.

*Durfee*, 375 U.S. at 113–14, 84 S.Ct. at 246. The Court did note the general rule of finality has exceptions, citing to *Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940) (preemption), and *United States v. United States Fidelity and Guaranty Co.*, 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940) (sovereign immunity). *Durfee*, 375 U.S. at 114, 84 S.Ct. at 246. The Court also noted, however, "that in neither of these cases had jurisdictional issues actually been litigated in the first forum." *Id.* at 114, n. 12, 84 S.Ct. at 247, n. 12.

The *Durfee* case is particularly apropos to the case at hand. The state court in Florida determined its own jurisdiction, just as the Nebraska court did in *Durfee*. In both cases, the issue arose as to whether the judgment should be treated as final in a federal court in another state at a later time. The Missouri resident in *Durfee* argued that the Nebraska court was without jurisdiction, seemingly assuming that it was self evident that the land in dispute was not in Nebraska. The Supreme Court held that "the location of land ... is a 'matter to be resolved by judicial determination'" and once that issue has been fully litigated and judicially determined, it cannot be relitigated. *Durfee*, 375 U.S. at 115, 84 S.Ct. at 247 (citation omitted).

The instant case is similar in that Blue Cross argues that the Florida court was without jurisdiction, again assuming that it is abundantly clear that the Weiners' health plans were covered by ERISA. The applicability of ERISA, however, is a mat-

ter that state courts can and indeed must resolve. *See, e.g., Browning Corp. Int'l v. Lee*, 624 F.Supp. 555, 557 (N.D.Tex.1986) (state courts must have ability to determine if ERISA governs particular employee benefit plan to effectively enforce state insurance laws). Blue Cross had "the opportunity to assert, and did assert, the preemption issue in its state court appeal." *Blue Cross and Blue Shield of Maryland, Inc. v. Weiner*, 868 F.2d 1550, 1555 (11th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 239, 107 L.Ed.2d 190 (1989). Therefore, since the ERISA preemption issue has been litigated, relitigation of the issue is barred for the same reasons announced in *Durfee*.

Error by the state court may be avoided by federal review in at least two ways. The case can be removed in the first instance to federal court under 28 U.S.C. § 1441, or the decisions of the state court can be reviewed by the appellate courts of the state and ultimately by the Supreme Court of the United States. This is not a case calling for the additional method of collateral attack that is permitted in the narrow class of cases defined by *Kalb v. Feuerstein, supra*, and *United States v. Ohio, supra*, when the ouster of jurisdiction is automatic. On the contrary, as described above, this case is one in which the state court was empowered to determine its own jurisdiction. Once having done so, the court's decision should be recognized by giving it res judicata effect.

Moreover, a collateral attack on the judgment in the circumstances of this case runs afoul of the *Rooker-Feldman* doctrine developed over time in two Supreme Court cases bearing those names. In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), a bill in equity was brought in the federal district court in Indiana to have a judgment of the state court, which had been affirmed on appeal by the Indiana Supreme Court, declared a nullity. The Supreme Court of the United States held that the federal district court did not have jurisdiction to set aside the state judgment because of alleged errors committed by the state courts on constitutional questions. The Supreme Court stated that

[i]f the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction. If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding.

*Id.* at 415, 44 S.Ct. at 150. The Court's holding was based on the Supreme Court's exclusive jurisdiction to review the decisions of the state supreme courts and the fact that the federal district courts possessed only original jurisdiction. *Id.* at 416, 44 S.Ct. at 150.

The Supreme Court reaffirmed *Rooker* in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). *Feldman* sought review in a federal district court of a decision by the District of Columbia Court of Appeals that denied him entry to the Bar. The Supreme Court of the United States held that the federal district court did not have jurisdiction to review allegations that were "inextricably intertwined" with the District of Columbia Court of Appeals' decision. *Id.* at 486–87, 103 S.Ct. at 1316–17. Together, *Rooker* and *Feldman* stand for the principle that lower federal courts may not decide federal issues that are raised in state proceedings and are "inextricably intertwined" with the state court's judgment.

Blue Cross argues that *Rooker* and *Feldman* are inapplicable to this case because the litigation here is an independent action in a foreign state and thus this Court is not sitting as an appellate court over the Florida courts. While this case is an independent action, the independent status of this litigation does not deter from the applicability of the principle enunciated in *Rooker* and *Feldman*. Were this Court to vacate the Florida court's judgment, as requested by Blue Cross, it would, in effect, be sitting as an appellate court reviewing the Florida court's jurisdictional determination. This is just what the Eleventh Circuit seems to have already resolved against Blue Cross. *See Blue Cross and Blue Shield of Mary-*

*land, Inc. v. Weiner,* 868 F.2d at 1554–55 (11th Cir.).

To violate the principles of federal-state jurisdiction as discussed in this Opinion would discredit the judicial authority of state courts and open the way to an additional and routine level of review by way of collateral attack in any case where state courts reject preemption, no matter how carefully litigated or disposed of. To allow this new method of review in this type of case would be inconsistent with the principles of federalism carefully developed over the years.

At oral argument Blue Cross argued that even if its preemption issue had been raised and fully tried at the trial court level, the principle of res judicata should be subjugated to the principle of federal preemption. In its papers, however, it argued that it never had the opportunity to raise and try the preemption issue. It contends that the Supreme Court decisions in *Pilot Life Ins. Co., supra,* and *Metropolitan Life Ins. Co., supra,* were not decided until after the state court judgment. It did raise the issue on appeal, citing those cases and urging remand to the trial court to develop the record more fully.

It would appear that the Eleventh Circuit in *Blue Cross and Blue Shield of Maryland, Inc. v. Weiner,* 868 F.2d 1550 (1989), has already concluded that Blue Cross had a reasonable opportunity to litigate the jurisdictional issue. After observing that the *Rooker-Feldman* doctrine only applies if the federal plaintiff has had a reasonable opportunity to raise the federal claim in the state court proceedings, the court concluded that Blue Cross "had the opportunity to assert, and did assert, the preemption issue in its state court appeal. Because the Florida appellate court is an appropriate forum for determining whether the state trial court had jurisdiction, the *Rooker-Feldman* bar applies to BCBS–Maryland's preemption claim." *Id.* at 1555. If the Florida appellate court's judgment was erroneous, the remedy was to appeal to a higher court.

More importantly to a sense of justice, however, is the observation that the defen-dants were not denied the right to raise preemption at the trial court level by an absence of knowledge that the defense was available. Many cases had already decided at that time that preemption was a proper defense. *See e.g., Phillips v. Amoco Oil Co.,* 799 F.2d 1464, 1469–70 (11th Cir.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987); *Powell v. Chesapeake & Potomac Tel. Co. of Va.,* 780 F.2d 419, 421–22 (4th Cir.1985), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986); *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1356–57 (9th Cir.1984); *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208, 1215–16 (8th Cir.), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981). Were there any doubt, the very language of ERISA could not be more clear. It provides:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a). The term "state law," as used in that section is specifically defined to include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). The statute also makes clear that, except for claims for benefits under an employee welfare benefit plan, "the district courts of the United States shall have *exclusive* jurisdiction of civil actions ..." 29 U.S.C. § 1132(e)(1) (emphasis supplied). When Blue Cross did not even raise the defense of preemption in the face of these explicit statutory provisions, one is prompted to inquire whether Blue Cross believed, at the time that it was defending the action at the trial level, that its group plan was in fact an ERISA plan.

Because the Court concludes that it should not sit in review of the Florida state court judgment pursuant to a collateral attack, it will not conduct an evidentiary hearing on the issue whether Robert Wein-

er, Sr.'s insurance policy was regulated by ERISA. Rather, the Florida judgment resolving this issue will be given effect under principles of res judicata and the motion to vacate will be denied.

For the reasons given in this Opinion, it is hereby Ordered this 5th day of February, 1990, that:

1. The motion of the plaintiffs to remand this case to the Circuit Court for Baltimore County, Maryland, is denied.

2. The motion of the defendants to vacate and stay enforcement of the judgment of the Florida courts is denied. The stay entered by the Court in the order of October 5, 1989, is lifted.

3. Defendants' request for an evidentiary hearing is denied.