543 So.2d 794 (1989)
BLUE CROSS/BLUE SHIELD OF FLORIDA, INC., Appellant,
v.
Robert WEINER, Margaret Weiner, Mark Weiner and Robert Weiner As Personal Representative of the Estate of Steven Weiner, Blue Cross of Maryland, Inc., Blue Shield of Maryland, Inc., Blue Cross and Blue Shield of Maryland, Inc., Appellees.
Nos. 4-86-2899, 4-86-2924, 4-86-2925, 4-86-2926 and 4-86-2927.
District Court of Appeal of Florida, Fourth District.
April 26, 1989.
Rehearing and Rehearing Denied June 19, 1989.
*795 Alan C. Sundberg and Sylvia Walbolt of Carlton, Fields, Ward, Emmanuel, Smith, Cutler & Kent, P.A., Tampa; Esler & Kirschbaum, P.A., Fort Lauderdale; Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, Miami; for appellant.
Joan Fowler and G. Bart Billbrough of Walton Lantaff Schroeder & Carson, West Palm Beach, for Blue Cross/Blue Shield of Maryland, Inc., Blue Cross of Maryland, Inc., and Blue Shield of Maryland, Inc.
Larry S. Stewart and James B. Tilghman, Jr., of Stewart Tilghman Fox & Bianchi, P.A., Miami, for appellees-Weiner.
Rehearing and Rehearing En Banc Denied June 19, 1989.
STONE, Judge.
This is a consolidated appeal from a final judgment in favor of the Weiners, the insureds, against Blue Cross and Blue Shield of Florida (Florida) and Blue Cross and Blue Shield of Maryland (Maryland). The jury returned a verdict against both companies on claims of fraud and intentional infliction of emotional distress, and against Maryland on negligence as well.
The claims arose out of a denial of coverage by Maryland. Maryland had issued a group health insurance plan which it sold to individual gasoline service station retailers through an independent marketing company, ASFI, supposedly in cooperation with the national and state service station dealers associations. Maryland retained Florida as its agent to service those accounts in this state. Maryland wrote the policies, and prepared a National Account Enrolled Group Summary (NAEGS), which set out guidelines to be followed by the servicing agents in each state in administering the group policy.
The plaintiff joined Service Station Dealers of America and purchased health insurance coverage for his family through ASFI, which became effective in March 1982. At that time the policy covered his sons, Mark, age 18, and Steven, age 20, who was enrolled as a full-time student. Tragically, on August 21, 1982, Mark, as a result of an accident, became a quadriplegic. During that same summer, Steven was diagnosed as having a fatal illness and did not return to school. Both required hospitalization and extensive nursing care. In August 1983, a decision was made by Maryland, and communicated to plaintiffs through Florida, that Mark was not covered since the accident occurred after his 19th birthday, and that Steven was not covered because he was no longer a full-time student.
In fact, the benefits book prepared by Maryland provided that children were covered until the end of the calendar year in which they turned 19 and that full-time students were covered until the end of the calendar year in which they turned 23. However, the NAEGS provided that, where a 19 year old, or older, child was incapable *796 of self support due to physical incapacity, that child would remain covered, provided the incapacity occurred prior to the child's 19th birthday.
The Weiners' nursing service terminated home care as to both children when they learned that coverage was no longer available. The plaintiffs' attorney contacted Florida and was told that the question of coverage was Maryland's decision. The attorney was referred to a Maryland executive, who advised him that Maryland had terminated coverage. The result was loss and suffering by the family from the lack of nursing care. Florida did offer, and did furnish, a conversion policy as to Mark, which did not include major medical coverage. It did not advise plaintiffs of their right to a conversion policy for Steven.
In October 1983, the Weiners filed suit, alleging the following counts: I.) fraud as to Maryland; II.) fraud as to Florida for falsely representing to the plaintiffs that they needed to purchase a conversion policy for Mark after his 19th birthday; III.) intentional infliction of mental distress as to both companies; IV.) negligence as to Maryland; and V.) negligence as to Florida. In March 1984, Maryland agreed to reinstate the coverage. The jury found in favor of Florida on the negligence claim and in favor of plaintiffs on all other counts. The verdict against Maryland was for $500,000 compensatory damages and $5,000,000 punitive damages, and against Florida for $200,000 compensatory and $1,500,000 punitive damages.
With respect to the fraud claim, Florida contends that there was no evidence that the conduct of its employees was anything more than negligent. Florida argues that it was entitled to rely upon what it was told by its principal, Maryland, and by ASFI, as it did not have the contract, even if a copy of the booklet was in Florida's possession. We concur, and conclude that Florida was entitled to a directed verdict on the fraud claim. Recovery for fraud requires proof of intentional and knowing misrepresentation of material fact, designed to cause detrimental reliance. See First Interstate Development Corp. v. Ablanedo, 511 So.2d 536 (Fla. 1987); A.S.J. Drugs, Inc. v. Berkowitz, 459 So.2d 348 (Fla. 4th DCA 1984). As an agent, Florida relayed the decisions of its principal to plaintiffs and their attorney. There was no proof of any intentional misrepresentation or any actual knowledge by Florida that Mark and Steven remained covered by the Maryland policy.
While the failure of Florida to provide broader benefits in the conversion contract may have been negligent, or a breach of contract, there is no proof of fraud. The evidence reflects that even prior to the accident, ASFI, which had no connection to Florida, had advised plaintiffs of the impending expiration of coverage upon Mark's 19th birthday and directed the insured to contact Florida about conversion to a non-group plan for Mark, and that this advice was subsequently repeated to plaintiffs by ASFI. It is further apparent from the record that once Maryland decided to terminate coverage, Florida had a contractual duty to offer the alternative coverage. Thus, the plaintiffs failed to establish that Florida knew that any of its representations, either as to the need for a conversion policy or as to coverage under either policy, were false.
With respect to the intentional infliction of emotional distress claim against Florida, we also reverse. In Metropolitan Life Insurance Co. v. McCarson, 467 So.2d 277 (Fla. 1985), the supreme court applied these comments given in the Restatement (Second) of Torts, § 46 (1965):
d. Extreme and outrageous conduct
... It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *797 Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
... .
g. The conduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances. The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.
There, Metropolitan Life issued a group insurance policy to McCarson, which covered employees of his shop, including his wife. Mrs. McCarson became incapacitated the next year with Alzheimer's disease, and the insurer stopped payment of her benefits, claiming her condition was preexisting. McCarson filed suit and Metropolitan Life was found in breach of contract and ordered to provide coverage. Mrs. McCarson later needed continual nursing care, for which Metropolitan was responsible until the policy lapsed or she became eligible for Medicare. The insurer requested proof of ineligibility for Medicare, and discontinued payment of benefits when it received no response. Looking at the facts in the light most favorable to the plaintiff, the supreme court ruled that they were not, as a matter of law, "`so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.'" McCarson at 279.
Here, there was no evidence that Florida had the authority to make independent coverage decisions with respect to Maryland's policy, and it initially double checked the coverage question with Maryland. In any event, it is undisputed that, when questioned about the coverage issue, Florida referred plaintiffs' counsel to Maryland, and that all further discussions were between them. The proof simply failed to reach the heavy burden required for recovery on this tort. See Metropolitan Life Insurance Co. v. McCarson; Swinarski v. Keller, 529 So.2d 1208 (Fla. 4th DCA 1988); Davis v. Gulf Life Insurance Co., 502 So.2d 1012 (Fla. 3d DCA 1987). See also Campbell v. Prudential Insurance Co., 480 So.2d 666 (Fla. 5th DCA 1985). Cf. Dominguez v. Equitable Life Assurance Society of the United States, 438 So.2d 58 (Fla. 3d DCA 1983).
Therefore as to Florida, we conclude that the trial court erred in denying Florida's motion for directed verdict as to the plaintiffs' claims for fraud and intentional infliction of emotional distress, and reverse.
With respect to Maryland, we first find no error in the instruction to the jury that ASFI was an agent of Maryland in connection with the group health plan. Ordinarily the existence of an agency relationship is a question of fact. Orlando Executive Park, Inc. v. Robbins, 433 So.2d 491 (Fla. 1983); Folwell v. Bernard, 477 So.2d 1060 (Fla. 2d DCA 1985), rev. denied, 486 So.2d 595 (Fla. 1986). However, here the relationship between Maryland and ASFI, in the development of and the national marketing of the group plan, in distributing Maryland's benefit book, and in other acts pursuant to the agreement between them, is susceptible of only one interpretation. See Jaar v. University of Miami, 474 So.2d 239 (Fla. 3d DCA 1985), rev. denied, 484 So.2d 10 (Fla. 1986). Therefore, the trial court did not err in concluding as a matter of law that ASFI was acting on Maryland's behalf.
As to Maryland, we are satisfied that there was sufficient evidence in the record, when considering inferences that may be drawn from the proofs, to submit the issue of fraud to the jury. See U.S. Home Corporation, Rutenberg Homes Division v. Metropolitan Property and Liability Insurance Co., 516 So.2d 3 (Fla. 2d DCA 1987); Needle v. Lowenberg, 421 So.2d 678 (Fla. 4th DCA 1982), rev. denied, 427 So.2d 737 (Fla. 1983); Nantell v. Lim-Wick Construction Co., 228 So.2d 634 (Fla. 4th DCA 1969). Cf. Sun Life Assurance Company of Canada v. Land Concepts, Inc., 435 So.2d 862 (Fla. 4th DCA 1983); First National Bank of Stuart v. Jackson, 267 So.2d 697 (Fla. 4th DCA 1972). We also find no error in submitting the issue of *798 punitive damages to the jury. First Interstate Development Corp. v. Ablanedo, 511 So.2d 536 (Fla. 1987); Rappaport v. Jimmy Bryan Toyota of Fort Lauderdale, Inc., 522 So.2d 1005 (Fla. 4th DCA 1988); Ruding v. Thompson, 517 So.2d 706 (Fla. 4th DCA 1987).
The appellees argue that Maryland's motion for directed verdict on the punitive damage issue did not question the sufficiency of proof on the fraud and emotional distress claims. However, we need not examine this point, nor whether the evidence supports the jury's findings that Maryland's actions amounted to an intentional infliction of emotional distress. The verdict form used here does not contain separate findings for damages for each count pled. As the verdict may be sustained on any one of the theories submitted to the jury, reversal is improper where no error is found as to one of those theories. See Colonial Stores, Inc. v. Scarbrough, 355 So.2d 1181 (Fla. 1978); Florida Patient's Compensation Fund v. Sitomer, 524 So.2d 671 (Fla. 4th DCA 1988); Howell v. Woods, 489 So.2d 154 (Fla. 4th DCA 1986); Getelman v. Levey, 481 So.2d 1236 (Fla. 3d DCA 1985).
Maryland's principal assertion on appeal is that there is a lack of jurisdiction over the subject matter because the plaintiffs' claim is preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001-1461, ("ERISA"), and that state courts do not have concurrent jurisdiction. See also Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). However, we find that ERISA does not apply to this policy.
ERISA regulates employee benefit plans, including ones providing for medical and hospital care, if the plan is established or maintained by an employer or employee organization, or both. ERISA § 4(a), 29 U.S.C. § 1003(a). Here, the record does not support a conclusion that there was an employee plan. The record does not reveal any agreement between the service station dealers associations and Maryland or AFSI. The evidence, although disputed, reflects that the plaintiff here was a sole proprietor who simply purchased a group policy for his family. See Xaros v. U.S. Fidelity and Guaranty Co., 820 F.2d 1176 (11th Cir.1987); Donovan v. Dillingham, 688 F.2d 1367 (11th Cir.1982); Taggart Corp. v. Life and Health Benefits Administration, Inc., 617 F.2d 1208 (5th Cir.1980). Here there was no plan, or even an informal agreement, established or maintained by an employer or an employee organization. Nor were any fiduciary responsibilities created by this insurance marketing scheme, which simply made group insurance available to members of the organization.
Maryland contends that attorney's fees were improperly taxed under section 627.428, Florida Statutes. However, it appears that this action involved additional issues other than those presented on appeal regarding the plaintiffs' tort claims. The trial court found that matters of coverage and interpretation of the policy were the "central core" of the trial. The trial court acknowledged that the sums sought and amount of hours appeared large, but were in part necessitated by obstructionist tactics. Generally claimants are not entitled to attorney's fees under section 627.428 in a tort action. E.g., United General Life Insurance Co. v. Koske, 519 So.2d 71 (Fla. 5th DCA 1988); United Services Automobile Association v. Kiibler, 364 So.2d 57 (Fla. 3d DCA 1978). However, the trial court determined that this award was founded on the hours utilized in resolving coverage. Nor has Maryland shown that the amount of the fee was clearly excessive. See Good Samaritan Hospital Ass'n v. Saylor, 495 So.2d 782 (Fla. 4th DCA 1986). See also State Farm Fire & Casualty Co. v. Palma, 524 So.2d 1035 (Fla. 4th DCA 1988).
As we are reversing the judgment against Florida, the award of attorney's fees in favor of the insured must be reversed as to Florida. We therefore reverse the judgment of attorney's fees and remand in order that they may be reapportioned as to Maryland alone.
We find the other issues raised by Maryland also to be without merit. Therefore, the final judgment is affirmed as to Maryland *799 and reversed as to Florida. We remand so that an amended judgment against Maryland may be entered accordingly.
DOWNEY and LETTS, JJ., concur.