**Joann CURRY, Appellant,**

v.

**CINCINNATI EQUITABLE INSURANCE COMPANY; Carl Curry; and St. Luke Hospital, Appellees.**

**CINCINNATI EQUITABLE INSURANCE COMPANY, Cross-Appellant,**

v.

**Joann CURRY, Cross-Appellee.**

**Nos. 91-CA-1114-MR, 91-CA-1245-MR.**

Court of Appeals of Kentucky.

July 31, 1992.

Bernard J. Blau, Gregory W. McDowell, Carl Turner, Cold Spring, for Joann Curry.

William T. Robinson III, Troy W. Skeens, Jr., Roger N. Braden, Covington, for Cincinnati Equitable Ins. Co.

Carl Curry, pro se.

Stephen J. Elsbernd, Newport, for St. Luke Hosp.

BEFORE GUDGEL, HOWERTON, and WILHOIT, JJ.

GUDGEL, Judge:

This is an appeal and cross appeal from an order entered by the Campbell Circuit Court dismissing the state law claims of appellant Joann Curry in an action filed to recover benefits allegedly due under a group health insurance policy. Appellant's state law claims were dismissed on the ground that these claims are preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.* On direct appeal, Curry contends that the court erred (1) by failing to adjudge that the defense of ERISA preemption was waived because it was not asserted as an affirmative defense, (2) by adjudging that ERISA is applicable to the group insurance plan at issue, (3) by failing to adjudge that Curry's state law claims are exempt from preemption under the "saving clause" exception to ERISA and (4) by failing to adjudge that the motion to dismiss filed by appellee Cincinnati Equitable Insurance Company (CEIC) was filed in violation of Civil Rule 92(3), and hence, is untimely. On cross appeal, CEIC argues that the court erred by adjudging that the appropriate standard for reviewing its denial of benefits is a *de novo* review. We affirm on direct and cross appeal.

Appellee St. Luke Hospital sued Joann Curry and her husband Carl for unpaid medical bills. Thereafter, Curry filed a separate suit against CEIC seeking to recover benefits allegedly due under a group insurance plan. In the hospital's suit, Curry filed a third-party complaint against CEIC. These cases were consolidated by the court. CEIC denied Curry coverage under the insurance plan because she allegedly failed to disclose on her application a prior history of kidney stones.

Shortly before trial, CEIC filed a motion in limine seeking an order dismissing Curry's state law claims on the ground that they are preempted by ERISA. The court orally denied the motion. However, following a mistrial caused by time constraints, the court agreed to reconsider the motion. On March 4, 1991, the court entered an order adjudging that all of Curry's state law claims are preempted by ERISA. The court also adjudged that the denial of benefits challenged under ERISA would be reviewed under a *de novo* standard. In a subsequent order, the court made its order of March 4, 1991, a final and appealable order. This appeal followed.

I.

On direct appeal, Curry first contends that the issue of ERISA preemption is an affirmative defense which was waived when CEIC did not plead the defense in its answer as required by CR 8.03. We dis-

agree. We note that the defense that a claim is preempted by federal law is not specifically listed in CR 8.03 as being an affirmative defense, nor is it listed in "other matters" which it would be proper to plead as set forth in 6 Bertlesman and Phillips, *Kentucky Practice*, CR 8.03 (4th ed. 1984). Nevertheless, we conclude that ERISA preemption is an affirmative defense because it has the effect of eliminating state law causes of action. However, for the following reasons, we are of the opinion that the defense was not waived.

■ Curry's initial claim was for breach of contract. Subsequently, she filed an amended complaint asserting a claim for bad faith, as well as claims under the Kentucky Consumer Protection Act and the Kentucky Unfair Settlement Practices Act. Once Curry filed her amended complaint, CEIC was entitled under CR 15.01 to plead in response to the amended complaint. Indeed, a defendant is specifically allowed to file an amended answer to an amended complaint. 6 Bertlesman and Philipps, *supra*, CR 15.01, Comment 1. Although CEIC responded to the amended complaint by filing a motion to dismiss rather than an amended answer, such a motion is usually treated by courts as an answer. *See* Wright & Miller, *Federal Practice and Procedure:* Civil § 1277 (1969). Thus, CEIC clearly pleaded ERISA preemption as a defense to the claims asserted in the amended complaint. Moreover, whenever a defense is asserted in an amended answer (here in a motion to dismiss) and arises out of the conduct, transaction or occurrence set forth in the plaintiff's original pleading, the defense relates back to the date of the original pleading. CR 15.03. It follows, therefore, and we conclude that the defense of ERISA preemption was not waived. *See Burns v. Capitol Beverage Co.*, Ky., 472 S.W.2d 510 (1971) (defendant permitted to amend his answer to litigate his true defense where plaintiff had ample time to investigate this defense and to prepare for trial, and hence, there was no element of surprise); *Teague v. Reid*, Ky., 340 S.W.2d 235 (1960) (trial court abused its discretion by declining to allow defendants to amend their answers even though the motions to amend were not filed until the court was considering motions for summary judgment); *Caldwell v. Bethlehem Mines Corp.*, Ky., 455 S.W.2d 67 (1970) (employer permitted to file special answer asserting defense of statute of limitations although not filed within time required by board's rules of procedure).

■ Although we agree with the trial court's determination that the issue as to ERISA preemption was not waived by CEIC, we note that we disagree with the trial court's conclusion, and CEIC's contention, that ERISA preemption is a subject matter jurisdiction question which can be raised *at any time.* On the contrary, ERISA preemption is an affirmative defense involving a choice of law issue which must be raised as a defense prior to trial. *Associates Investment v. Claeys,* 533 N.E.2d 1248 (Ind.App.1989).

## II.

■ Next, Curry argues that the trial court erred by adjudging that the group plan at issue is an "employee benefit plan" as defined by ERISA. We disagree. With certain exceptions, ERISA's provisions "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The following five elements must be present for there to be an "employee benefit plan," as defined by 29 U.S.C. § 1002(1):

(1) A *plan, fund* or *program;*

(2) *Established or maintained;*

(3) By an employer or by an employee organization, or by both;

(4) For the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeships or other training programs, daycare centers, scholarship funds, prepaid legal services or severance benefits;

(5) To participants or their beneficiaries.

Curry argues that the group policy in question was not a *plan* as defined by ERISA and that even if it were, that ERISA does not govern the plan because it

was not *established or maintained* by her employer, Southwestern College of Business (Southwestern). Curry maintains that Southwestern did not create the group policy, but only made it available to employees. Therefore, Curry urges that the plan was in effect an independent marketing scheme outside the policy of § 1002. We disagree. In the case cited by Curry, *Blue Cross/Blue Shield of Florida, Inc. v. Weiner*, 543 So.2d 794 (Fla. 4th Dist.Ct.App.1989), the Florida court held that ERISA did not apply to claims which arose out of a denial of coverage by Blue Cross and Blue Shield because the group health insurance plan was sold to individual gasoline service station retailers through an independent marketing company, ASFI, supposedly in cooperation with the national and state service station dealers associations. The court based its holding on the fact that the record did not reveal any plan or informal agreement established or maintained by an employer or an employee organization. Nor were there any fiduciary responsibilities created by the insurance marketing scheme, which simply made group insurance available to members of the organization. The instant action, however, is clearly distinguishable from *Weiner*. Here, there is a signed written agreement between Curry's employer, Southwestern, and CEIC. Moreover, the plan at issue here was provided to all qualified employees.

██ Curry also argues that ERISA does not apply because Southwestern had no administrative or managerial responsibilities regarding the plan, and therefore, did not show that it *established or maintained* the plan. Again, we disagree. According to the affidavit of Ken Uveges, who was involved with the underwriting of the plan, Southwestern was required to contribute at least 50 percent toward employee premiums. In addition, Southwestern negotiated for the kinds of coverage to be provided, as well as premiums, and was responsible for the plan design, including the deductible and co-insurance requirements. Moreover, Southwestern reserved the right to change certain matters regarding coverage and played a substantial role in the day-to-day administration of the plan. Clearly, Southwestern did far more than collect premiums from its employees, as appellant alleges. Indeed, because Southwestern made contributions to the plan and because Southwestern's function with respect to the plan was not limited to collecting premiums, the plan does not meet two of the four requirements under the current labor department regulation for showing that certain employee welfare plans are not governed by ERISA. 29 C.F.R. § 2510.3-1(j). We hold, therefore, that the trial court did not err by finding that the group policy upon which Curry's claims are based is an "employee benefit plan" as defined by ERISA.

### III.

Next, Curry contends that even if her plan is governed by ERISA that her state law claims are "saved" from preemption by virtue of 29 U.S.C. § 1144(b)(2)(A). This saving clause provides that nothing in ERISA "shall be construed to exempt or relieve any person from any law of any State which *regulates insurance*, banking, or securities." (Emphasis added.) Curry's state law claims include claims that CEIC committed a tort by denying her claim in bad faith, and that CEIC's actions violated both the Kentucky Consumer Protection Act (KRS 367.170) and the Kentucky Unfair Claims Settlement Practices Act (KRS 304.12–130). Curry maintains that these claims are based on state laws which seek to regulate insurance and therefore are saved from preemption. We disagree.

Three criteria were enunciated by the United States Supreme Court in *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 49, 107 S.Ct. 1549, 1554, 95 L.Ed.2d 39 (1987), for determining whether a given state law claim is preempted by federal law; (1) the state law must regulate insurance (common-sense understanding of the saving clause), (2) the state law must fall under the business of insurance as interpreted by case law under the McCarran–Ferguson Act, 15 U.S.C. § 1011 *et seq.*, and, most importantly, the state law must not fall within the clear expression of congressional intent that ERISA's civil enforcement

scheme be exclusive. 481 U.S. at 57, 107 S.Ct. at 1558. Under the McCarran–Ferguson Act, three factors have been used by courts to define the "business of insurance": (1) whether the practice has the effect of transferring or spreading risk; (2) whether a practice is an integral part of a policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry. 481 U.S. at 48–49, 107 S.Ct. at 1553. In *Pilot Life,* the Court addressed the question of whether Mississippi's law concerning the tort of bad faith by insurers fell within ERISA's saving clause. For a state law claim to satisfy the common-sense understanding of the phrase "to regulate insurance" the claim must not just have an impact on the insurance industry, but must be specifically directed toward that industry. 481 U.S. at 50, 107 S.Ct. at 1554. The Supreme Court found that Mississippi's common law governing the tort of bad faith was applicable to any breach of contract and thus that it was not specifically directed toward regulating the insurance industry. In addition, the Court found that Mississippi's common law of bad faith at most satisfied only the second of the three McCarran–Ferguson Act factors. Finally, considering the third criterion of congressional intent, the Supreme Court noted:

> The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive. This conclusion is fully confirmed by the legislative history of the civil enforcement provision.

481 U.S. at 54, 107 S.Ct. at 1556–57.

■ The fact that a bad faith claim may also be asserted in Kentucky in contract actions which are not related to insurance means that Curry's claim fails to satisfy the first criterion discussed by the Court in *Pilot Life* in determining whether a state law claim is saved from preemption. In addition, the three criteria under the McCarran–Ferguson test are not satisfied. More importantly, CEIC cites several Sixth Circuit cases which support its argument that ERISA provides the exclusive remedy for the very type of action involved in Curry's bad faith claim. *Davis v. Kentucky Finance Cos. Retirement Plan,* 887 F.2d 689 (6th Cir.1989) (equitable estoppel claim preempted), *cert. denied* 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990); *Daniel v. Eaton Corp.,* 839 F.2d 263 (6th Cir.1988) (breach of contract and promissory estoppel claims preempted), *cert. denied* 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988); *Turner v. Retirement Plan of Marathon Oil Co.,* 659 F.Supp. 534, 541 (N.D.Ohio 1987) (claims for breach of fiduciary duty, negligence, estoppel, breach of contract, and fraud preempted), *aff'd* 845 F.2d 327 (6th Cir.1988).

■ Curry's second state claim, that CEIC's actions violated the Kentucky Consumer Protection Act, is also preempted by ERISA under the first criterion in *Pilot Life* because the Act regulates more than just the insurance industry. Indeed, KRS 367.170 states that "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of *any* trade or commerce are hereby declared unlawful." (Emphasis added.) The second criterion is also not met because the Kentucky Consumer Protection Act does not transfer or spread a policyholder's risk, nor does it form an integral part of the policy relationship between the insurer and the insured, nor is it limited solely to the insurance industry. Application of the third and most important factor, congressional intent to make ERISA the exclusive remedy for actions concerning employee benefit plans, also results in Curry's claim under the Consumer Protection Act being preempted.

■ A determination of whether ERISA preempts Curry's third claim under the Kentucky Unfair Claims Settlement Practices Act, KRS 304.12–130, *et seq.,* presents a closer question because the Act relates to practices by the insurance industry. The Act pertains to and regulates practices relating to the procedural aspects of claims processing and is intended to protect the public from unfair trade practices and

fraud. *See State Farm Mutual Auto. Ins. Co. v. Reeder,* Ky., 763 S.W.2d 116 (1988). CEIC contends that this Act does not "regulate insurance" for saving clause purposes because it does not regulate the substantive content of the insurance contract as was the case in *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), where the Court decided that the saving clause prevented preemption of a Massachusetts statute which required that minimum mental health benefits be provided Massachusetts residents covered by general health insurance policies.

However, even if we assume that Kentucky's Unfair Claims Settlement Practices Act regulates insurance, there is ample support for holding that appellant's claim under the Act is preempted by ERISA. In *Kanne v. Connecticut General Life Ins. Co.,* 867 F.2d 489 (9th Cir.1989), *cert. denied* 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989), the Ninth Circuit addressed the issue of whether ERISA preempted claims under the California Insurance Code which prohibited various unfair insurance practices having to do with the processing of claims. As here, the Kannes argued that the California Insurance Code was a law regulating insurance within the meaning of the saving clause. The court concluded, "We can assume, without deciding, that § 790.03(h) is a law regulating insurance under the saving clause. Nevertheless, under *Pilot Life* we find the conclusion inescapable that the private right of action for violation of § 790.03(h) is preempted by ERISA." *Id.* at 493. Further, in *Bishop v. Provident Life and Casualty Insurance,* 749 F.Supp. 176 (E.D.Tenn.1990), the court determined that appellant's statutory claim under the Tennessee Insurance Code was preempted because it conflicted with the ERISA civil enforcement scheme. Finally, in *Buehler Ltd. v. Home Life Ins. Co.,* 722 F.Supp. 1554 (N.D.Ill.1989), the court held that the statutory claim was preempted even though the statute regulated insurance since Buehler's exclusive cause of action was to recover benefits under ERISA.

Consistent with the above-cited authorities, we hold that Curry's claim under the Kentucky Unfair Claims Settlement Practices Act is also preempted. To conclude otherwise would defeat the clear congressional intent that ERISA's civil enforcement scheme should be an exclusive remedy, and would undermine the policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme.

## IV.

■ Next, Curry contends that the trial court erred by granting CEIC's motion to dismiss her state law claims because the motion was not filed within the time constraints of rules relating to the Economic Litigation Program. We disagree. Curry argues that even though CEIC's motion to dismiss was styled a "Motion in Limine," that it was in reality a motion for summary judgment which under CR 92(3) must be filed ten days prior to the pretrial conference. The pretrial conference was held on January 10, 1990. However, in disregard of CR 92(3), CEIC's motion to dismiss was not filed until September 6, 1990, about twelve days prior to trial. Curry's actions, however, were also dilatory. In spite of the court's order entered March 8, 1990, granting her ten days to file any motion to amend the pleadings, Curry did not file her amended complaint until September 6, 1990. In the last analysis, we conclude that since the issue of whether Curry's state law claims are preempted by ERISA is a pivotal issue, reasons of judicial economy dictate that CEIC's motion should not be denied solely because it may not have met the time constraints of CR 92(3). This is especially true since the parties were afforded ample opportunity to brief and argue the preemption issue, and hence, Curry was not prejudiced by the fact that CEIC's motion to dismiss was not filed earlier.

## V.

■ On cross appeal, CEIC contends that the court erred by determining that the denial of benefits challenged under

ERISA should be reviewed pursuant to a *de novo* standard. We disagree. In *Firestone Tire and Rubber Co. v. Brunch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court addressed the appropriate standard of review in 29 U.S.C. § 1132(a)(1)(B) actions challenging benefit eligibility determinations. Guided by principles of trust law, the Court held that the arbitrary and capricious standard, developed under the Labor Management Relations Act and adopted by some federal courts for § 1132(a)(1)(B) actions in light of ERISA's failure to provide an appropriate standard of review, should not be imported into ERISA on a wholesale basis. Trust principles make an arbitrary and capricious standard of review appropriate only when a trustee exercises discretionary powers. Thus, the Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. at 115, 109 S.Ct. at 956.

CEIC argues that the plan administrator in the instant action has certain discretionary authority which justifies application of the arbitrary and capricious standard. We cannot agree. CEIC cites us to no provisions of the plan which permit the administrator to exercise discretion in determining eligibility for benefits or in construing the plan's terms. Indeed, the plan language cited by CEIC shows only that the plan administrator has discretion to recover excess payments made and to require a satisfactory proof of claim.

CEIC cites three cases in support of its argument that the arbitrary and capricious standard should be applied here. However, all of these cases are factually distinguishable from the instant action. In *Davis v. Kentucky Finance Cos. Retirement Plan,* 887 F.2d at 689, the court cited to section 6.08 of the plan before it which provided that the retirement committee was to interpret the plan and determine all questions arising in the administration, interpretation and application of the plan. "This section makes clear that the plan administrator is

given great discretion to interpret the language of the plan." *Id.* at 693–94. In *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979 (6th Cir.1991), the court determined that the arbitrary and capricious standard was applicable because the plan permitted the insurance company to decide whether an applicant was disabled, using medical evidence satisfactory to the company. In *Bali v. Blue Cross and Blue Shield Ass'n,* 873 F.2d 1043 (7th Cir.1989), as in *Miller,* the administrator was given discretion as to the amount and kind of information required to prove disability.

Here, however, no evidence was adduced showing that the plan administrator had any discretion in determining eligibility for benefits or in interpreting terms of the plan. In spite of this, CEIC argues that the language in the contract at issue provides the "necessary discretionary language." We disagree. Such a conclusion would defeat the Supreme Court's purpose in *Firestone* which was to ensure that when a plan's terms do not confer certain discretionary powers on a plan trustee that a trustee's exercise of such discretion is subject to *de novo* review.

The court's judgment is affirmed.

All concur.