Alvan H. WOLF, Plaintiff, Appellee,

v.

**RELIANCE STANDARD LIFE INSURANCE COMPANY,**
Defendant, Appellant.

No. 95–1440.

United States Court of Appeals,
First Circuit.

Heard Oct. 6, 1995.

Decided Dec. 11, 1995.

James A. Young with whom Michael J. Burns, Christie, Pabarue, Mortensen & Young, P.C., Philadelphia, PA and Cheri L. Crow, Boston, MA, were on brief for appellant.

William E. Bernstein with whom Barbara S. Liftman and Weinstein, Bernstein & Burwick, P.C., Worcester, MA, were on brief for appellee.

Before TORRUELLA, Chief Judge, STAHL and LYNCH, Circuit Judges.

STAHL, Circuit Judge.

Plaintiff-appellee Alvan Wolf prevailed in his jury-tried contract action against defendant-appellant Reliance Standard Life Insurance Company ("Reliance") for denial of disability benefits. Reliance appeals the trial court's ruling that ERISA preemption is an affirmative defense which Reliance waived by failing to plead it timely. We affirm.

## I.

### BACKGROUND

We begin by reciting the facts in the light most favorable to the verdict. *See Aetna Cas. Sur. Co. v. P & B Autobody,* 43 F.3d 1546, 1552 (1st Cir.1994).

Wolf founded Brookfield Factory Outlet, Inc. ("Brookfield"), a now-defunct chain of shoe stores. During Brookfield's heyday, Wolf earned approximately $8,000 per month as its President and Chief Executive Officer. In the fall of 1988, he was diagnosed with severe depression, apparently resulting from

business and personal difficulties. In the spring of 1989, Wolf experienced heart problems requiring a brief hospitalization. Thereafter, Wolf continued to work until April 24, 1989, when he suffered a massive heart attack.

From the time of Wolf's depression diagnosis in 1988 until his heart attack in 1989, he actually drew only $500 per week of his $8,000 per month salary due to Brookfield's ongoing financial problems. There was conflicting testimony at trial as to whether Wolf actually was entitled to the unpaid remainder of his salary, which Wolf asserted the company owed him as a debt payable.

The insurance policy under which Wolf sought recovery took effect on February 1, 1985. The policy provided a monthly benefit to a disabled employee equal to sixty percent of "covered monthly earnings," defined as "the insured's basic monthly salary received from [the employer] on the day just before the date of total disability." In September 1990, Wolf filed a claim for disability benefits. Reliance denied the claim in May 1991, stating that Wolf had neither proved that he was a full-time employee when he became disabled nor that he was totally disabled, and that Wolf was late giving notice of his claim.

In January 1992, Wolf, a Massachusetts citizen, sued Reliance in Massachusetts state court alleging breach of contract and unfair trade practices. Reliance, an Illinois corporation with its principal place of business in Pennsylvania, removed the suit, based on diversity, to the United States District Court for the District of Massachusetts. 28 U.S.C. §§ 1441, 1332.

The parties consented to trial before U.S. Magistrate Judge Charles B. Swartwood III. On October 25, 1994, one week before trial, Reliance filed several motions,[1] each asserting, for the first time, that Wolf's state law claims were preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. §§ 1001–1461. The trial court denied the motions, ruling that ERISA preemption was an affirmative defense which Reliance waived by failing to plead it in a timely manner. The trial court then denied Reliance leave to amend its pleadings, finding undue delay by Reliance and significant prejudice to Wolf if, on the eve of trial, Reliance were allowed to change the entire legal basis for its opposition to Wolf's claim by its introduction of an ERISA preemption defense.[2]

The breach of contract claim was tried to a jury on November 2–4, 1994, resulting in a special verdict for Wolf. The jury found that Wolf's basic monthly salary was $8,000 per month on the day before he became totally disabled. The trial court entered judgment for Reliance on the unfair trade practices claim, and Wolf does not appeal from that judgment. In December 1994, the trial court issued a memorandum decision calculating Wolf's damages to be $196,606.72 plus interest and future payments.[3] Reliance then filed a renewed motion for judgment as a matter of law and, alternatively, a motion for a new trial, and both were denied. This appeal followed.

## II.

### DISCUSSION

The principal issue before us is whether ERISA preemption is jurisdictional, and thus may be raised at any point in litigation, or an affirmative defense, waivable if not pleaded timely. A related issue is whether the trial court abused its discretion in denying Reliance leave to amend its pleadings to add an ERISA preemption defense.

#### A. ERISA Preemption

 Whether ERISA preemption is jurisdictional or a waivable affirmative defense is a pure question of law that we review *de*

---

1. Specifically, Reliance filed motions to dismiss for failure to state a claim, to strike Wolf's jury trial demand, and to apply an arbitrary and capricious standard of review.

2. The only previous indication of any possible ERISA preemption argument in this litigation was an exchange of letters dated May 31, 1991 and July 29, 1991 between Reliance and Wolf's attorney, each making a single passing reference to ERISA.

3. The parties stipulated that if Reliance was found liable to Wolf, the trial court would calculate the damages.

*novo. See Correa v. Hospital San Francisco,* 69 F.3d 1184, at 1193 (1st Cir.1995).

■ Reliance argues that because there is a "compelling policy" in favor of application of federal ERISA law to this claim, ERISA preemption is jurisdictional[4] and therefore nonwaivable.[5] The foundation of the argument is ERISA's broad preemption provision: ERISA [with a few inapplicable exceptions] "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). One of Congress's intentions in enacting ERISA, as divined through legislative history, was to encourage the growth of private employee benefit plans by replacing diverse state laws with a nationally uniform federal common law regulating employee benefit plans.[6] Treating ERISA preemption as non-jurisdictional and therefore waivable would, so the argument goes, frustrate that intent, subjecting employee benefit plans to regulation and litigation under fifty non-uniform bodies of state law. The costs of adapting to and litigating under non-uniform state law and the potential for liability and damages beyond that permitted under ERISA would deter employers from enacting benefits plans. Thus, courts should hold that ERISA preemption is jurisdictional and not waivable, consistent with the congressional intent to create and apply a uniform federal law regulating employee benefit plans.

While the foregoing argument is not without merit, it is precluded by precedent. The Supreme Court analyzed at length the legislative history behind ERISA's preemption provision in *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 44–46, 52–57, 107 S.Ct. 1549, 1551–52, 1555–58, 95 L.Ed.2d 39 (1987), focusing on the civil enforcement scheme of § 502(a) of ERISA (29 U.S.C. § 1132(a)), under which a plan participant can bring a suit for benefits due. The Court concluded that Congress intended to create an exclusive federal remedy, with a "pre-emptive force ... modeled after § 301" of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. *Pilot Life,* 481 U.S. at 52, 107 S.Ct. at 1555. Accordingly, the Court held that ERISA preempts all state law causes of action for benefits due under an ERISA plan. *Id.* at 57, 107 S.Ct. at 1558. *Pilot Life* did not present the question whether ERISA preemption was a jurisdictional matter or a waivable defense, but the Supreme Court made clear that courts deciding the scope of ERISA preemption should look to LMRA preemption decisions for guidance. *Id.* at 54–55, 107 S.Ct. at 1556–57.

■ The *Pilot Life* decision explains that ERISA's preemption clause and civil enforcement scheme entirely displaced state law causes of action for benefits claims under ERISA plans. *Id.* at 55–57, 107 S.Ct. at 1557–58. If state law is "displaced," then arguably there is no subject matter jurisdiction over a state law cause of action for benefits due. Lack of subject matter jurisdiction is, of course, a nonwaivable defense and may be raised at any time. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982). That jurisdictional argument is unavailing, however, because this Circuit has squarely held that LMRA preemption *is* waivable. *Sweeney v. Westvaco Co.,* 926 F.2d 29, 40 (1st Cir.) (Breyer, C.J.), *cert. denied,* 502 U.S. 899, 112 S.Ct. 274, 116 L.Ed.2d 226 (1991). Given that the Supreme Court in *Pilot Life* explicitly directed courts to treat ERISA preemption like LMRA preemption, 481 U.S. at 51–56, 107 S.Ct. at 1554–57, Judge (now

---

**4.** We note that although Reliance did not use the term "jurisdictional," that is the thrust of its argument.

**5.** *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982) (explaining that subject matter jurisdiction is nonwaivable); *see generally* George Lee Flint, Jr., *ERISA: Nonwaivability of Preemption,* 39 U.Kan. L.Rev. 297 (1991) (arguing that courts should hold ERISA preemption nonwaivable).

**6.** ERISA's House sponsor, Representative Dent, described the "reservation to Federal authority [of] the sole power to regulate the field of employee benefit plans" as ERISA's "crowning achievement." 120 Cong.Rec. 29197 (1974). Senator Williams commented that ERISA's preemption will have the effect of "eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans." *Id.* at 29933.

Justice) Breyer's analysis in *Sweeney* leads us to conclude that ERISA preemption is also waivable.

The rationale behind *Sweeney's* holding that LMRA preemption is waivable applies with equal force to ERISA preemption. The *Sweeney* court began with an analysis of *International Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986), a National Labor Relations Act ("NLRA") preemption case. *See* 29 U.S.C. §§ 157, 158. In *Davis*, the Supreme Court held that NLRA preemption is jurisdictional, and therefore nonwaivable, because NLRA preemption dictates the choice of *forum* (i.e., whether a court or the National Labor Relations Board ("NLRB") has the power to hear the case) as opposed to simply the choice of *law* (i.e., whether state or federal law applies). *See id.* at 398–99, 106 S.Ct. at 1916–17. *Sweeney* stressed that the Supreme Court itself carefully limited its holding in *Davis* to §§ 7 and 8 of the NLRA and not other statutes. *Sweeney*, 926 F.2d at 38. Those sections evidence a Congressional intent to "refuse[ ] to permit parties to submit such a dispute to the courts even where the parties themselves wished to do so." *Id.* at 38–39. In *Sweeney*, this court determined that LMRA preemption, unlike NLRA preemption, "concerns what *law* a decision maker must apply, not what *forum* must decide the dispute." 926 F.2d at 39. Based on that premise, the panel in *Sweeney* applied the converse of the *Davis* rule, holding that LMRA preemption is waivable because it affects the choice of law, not the choice of forum. *Id.* at 39–40.

■ Like LMRA preemption, ERISA preemption in a benefits-due action does not affect the choice of forum, because ERISA's jurisdictional provision provides that "State courts of competent jurisdiction and district courts of the United States shall have *concurrent jurisdiction* of actions," 29 U.S.C. § 1132(e)(1) (emphasis added), "brought by a participant or beneficiary to recover benefits due." 29 U.S.C. § 1132(a)(1)(B). The plain language of § 1132 tells us that if a plaintiff brought a "benefits-due" action in state court and the defendant pleaded ERISA preemption, this would not deprive the court of

jurisdiction over the subject matter; rather, ERISA preemption in that situation would dictate the applicable law. Preemption is, as *Sweeney* says, ultimately "a matter of Congressional intent, as embodied, explicitly or implicitly, in a particular federal statute." *Sweeney*, 926 F.2d at 38. In considering that intent, we are guided by a number of factors. It is instructive, though not necessarily dispositive, that ERISA, like the statute in *Sweeney*, is a choice of law rather than a choice of forum statute. We also believe that the interests in uniformity which Congress hoped to serve in ERISA did not extend to permitting defendant corporations, often more sophisticated about ERISA than individual plaintiffs, to sit on their hands and not claim the defense until the last minute. *Cf. Williams v. Ashland Eng'g Co., Inc.*, 45 F.3d 588, 593 (1st Cir.) (emphasizing the importance of protecting against the strategic use of a last minute ERISA preemption defense), *cert. denied*, ── U.S. ──, 116 S.Ct. 51, 133 L.Ed.2d 16 (1995). That employers were meant to enjoy the benefits of uniformity did not mean they could not forego those benefits.

Other courts, including the Fifth and Ninth Circuits have held that ERISA preemption is waivable. *See Dueringer v. General Am. Life Ins. Co.*, 842 F.2d 127, 130 (5th Cir.1988) (holding that ERISA preemption is waivable); *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488, 1497 (9th Cir.1986) (same); *Rehabilitation Inst. of Pittsburgh v. Equitable Life Assur. Soc'y*, 131 F.R.D. 99, 101 (W.D.Pa.1990) (same), *aff'd*, 937 F.2d 598 (3d Cir.1991).

An apparent majority of state courts addressing the question have reached the same conclusion. *See Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 546 (Tex.) (holding that ERISA preemption is waivable when it does not deprive a state court of jurisdiction), *cert. denied*, 502 U.S. 824, 112 S.Ct. 88, 116 L.Ed.2d 60 (1991); *Curry v. Cincinnati Equitable Ins. Co.*, 834 S.W.2d 701, 703 (Ky.Ct. App.1992) (same); *Hughes v. Blue Cross of N. Cal.*, 215 Cal.App.3d 832, 263 Cal.Rptr. 850, 861 (1989) (same), *cert. dismissed*, 495 U.S. 944, 110 S.Ct. 2200, 109 L.Ed.2d 527 (1990); *Associates Inv. Co. v. Claeys*, 533

N.E.2d 1248, 1251 (Ind.Ct.App.1989). *But see Chestnut–Adams Ltd. Partnership v. Bricklayers and Masons Trust Funds of Boston, Mass.,* 415 Mass. 87, 612 N.E.2d 236, 238 (1993) (holding that the preemption intended by Congress in enacting ERISA is so broad as to make it jurisdictional and therefore nonwaivable); *Barry v. Dymo Graphic Sys., Inc.,* 394 Mass. 830, 478 N.E.2d 707, 712 (1985) (same).[7]

Accordingly, we hold that ERISA preemption in a benefits-due action is waivable, not jurisdictional, because it concerns the choice of substantive law but does not implicate the power of the forum to adjudicate the dispute.[8]

■ We now turn to the question whether ERISA preemption must be pleaded as an affirmative defense. Federal Rule of Civil Procedure 8(c) requires that a responsive pleading set forth certain enumerated affirmative defenses as well as "any other matter constituting an avoidance or affirmative defense." Fed.R.Civ.P. 8(c); *see generally* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1271 (1990). The First Circuit test for whether a given defense falls within the Rule 8(c) "residuary" clause is whether the defense "shares the common characteristic of a bar to the right of recovery even if the general complaint were more or less admitted to." *Jakobsen v. Mass. Port Auth.,* 520 F.2d 810, 813 (1st Cir.1975). ERISA preemption shares this characteristic insofar as it would bar Wolf from recovering on his state law contract claim even if Reliance admitted Wolf's allegations. Therefore we hold that ERISA preemption in a benefits-due action is an affirmative defense and, as such, it is subject to waiver if not timely pleaded.

Several courts, including this Circuit in *dictum,* have held that ERISA preemption in benefits-due actions must be pleaded timely

as an affirmative defense. *See Williams v. Ashland Eng'g Co., Inc.,* 45 F.3d 588, 593 & n. 7 (1st Cir.) (stating, in *dictum,* that ERISA preemption is an affirmative defense, but finding no waiver when pleaded six months before summary judgment), *cert. denied,* —— U.S. ——, 116 S.Ct. 51, 133 L.Ed.2d 16 (1995); *Dueringer,* 842 F.2d at 129–130 (5th Cir.1988) (holding that ERISA preemption must be pleaded as an affirmative defense); *Rehabilitation Inst.,* 131 F.R.D. at 100–01 (W.D.Pa.1990) (same), *aff'd,* 937 F.2d 598 (3d Cir.1991); *Gorman,* 811 S.W.2d at 546 (Tex.1991) (same); *Curry,* 834 S.W.2d at 703 (Ky.Ct.App.1992) (same); *but see Chestnut–Adams,* 612 N.E.2d at 238 (Mass.1993) (holding that ERISA preemption is jurisdictional and therefore not waivable).

### B. Amendment of the Pleadings

■ Having concluded that ERISA preemption is an affirmative defense, it follows that the trial court correctly treated Reliance's attempt to raise ERISA preemption as a motion seeking leave to amend the pleadings.[9] We now address whether the trial court abused its discretion in denying Reliance leave to amend.

■ Whether or not to grant leave to amend the pleadings is within the discretion of the trial court and the court's decision will be reversed only upon a showing of abuse of that discretion. *Manzoli v. Commissioner,* 904 F.2d 101, 107 (1st Cir.1990).

■ Failure to plead an affirmative defense generally results in waiver of the defense and its exclusion from the case. *Conjugal Partnership v. Conjugal Partnership,* 22 F.3d 391, 400 (1st Cir.1994). An affirmative defense must be pleaded in the answer in order to give the opposing party notice of the defense and a chance to develop evidence and offer arguments to controvert the de-

---

7. We are, of course, not bound by the Massachusetts Supreme Judicial Court's interpretation of a federal statute or the Congressional intent behind it.

8. Our holding is limited to ERISA preemption of benefits-due actions. ERISA permits several other types of civil actions (e.g., for injunctive relief, for breach of fiduciary duty, etc.) subject to exclusive jurisdiction in the federal courts rather

than concurrent jurisdiction. *See* 29 U.S.C. §§ 1132(a)(1)(A), 1132(a)(2)–(6), 1132(e)(1).

9. At oral argument on the eleventh-hour motions, Reliance conceded the true goal of the motions: "It's not to dismiss the complaint *per se,* it's just to substitute ERISA for the breach of contract under state law."

fense. *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 15 F.3d 1222, 1226 (1st Cir.1994).

 Reliance conceded at oral argument that ERISA preemption was an affirmative defense. It argued, however, that having raised in its answer a broad "failure to state a claim upon which relief may be granted" defense, *see* Fed.R.Civ.P. 12(b)(6), this defense allowed it to later, a week before trial, raise the specific defense of ERISA preemption. *Cf. Williams*, 45 F.3d at 593. In *Williams*, this court enunciated a test to determine when a general, non-specific defense of failure to state a claim, *see* Fed. R.Civ.P. 12(b)(6), as Reliance originally filed, is sufficient to preserve the affirmative defense of ERISA preemption. "[A]n inquiring court must examine the totality of the circumstances and make a practical, common-sense assessment about whether Rule 8(c)'s core purpose—to act as a safeguard against surprise and unfair prejudice—has been vindicated." *Id.* In *Williams*, the defendant raised ERISA preemption well before the close of discovery, and six months prior to the filing of cross-motions for summary judgment. *Id.* The issue was briefed by both sides on summary judgment and thus we found that no "ambush" had occurred. *Id.* In the instant case, however, Reliance did not raise ERISA preemption in its answer, at the pretrial hearings, in the pretrial memoranda, or at any point during discovery, but rather raised it only five days before trial.[10] As this Circuit recently said in another case of waiver, "[t]he chronology of the case speaks volumes about the lack of timeliness." *Correa v. Hospital San Francisco*, 69 F.3d 1184, at 1194–95 (1st Cir.1995).

 The trial court denied leave to amend because of the undue delay by Reliance in raising the issue[11] and the substan-

tial prejudice to Wolf if amendment were allowed. It is well within a court's discretion to find prejudice where the amendment "substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation." *See* 6 Wright & Miller, *supra*, § 1487, at 623. This is precisely such a case: Reliance sought to change the theory of the case five days before trial, which would have forced Wolf to conduct additional discovery, research, and preparation on the ERISA-related issues.[12] We hold that, based on these considerations, there was no abuse of discretion in denying leave to amend.

### C. Reliance's Other Arguments

We have considered appellant's other assertions of error and find them to be without merit.

### III.

### CONCLUSION

For the foregoing reasons, the judgment of the trial court is ***Affirmed. Costs to appellees.***

---

**10.** Reliance argues that the previously referenced exchange of letters was sufficient to put Wolf on notice that Reliance intended to pursue an ERISA preemption defense. *See supra* note 2. We cannot agree that the passing references in those letters are the legal equivalent of pursuing a defense in court.

**11.** When the trial judge asked Reliance at oral argument why ERISA preemption was not raised earlier, counsel explained: "I sat down a couple weeks ago to start doing jury instructions and

things in the case and realized that this was a case that should be done by ERISA.... I had made myself ... knowledgeable about ERISA in the last couple of weeks. It's not an area of my normal practice."

**12.** Despite the briefing by both parties on the merits of ERISA preemption, we have no occasion to reach the issue, because we find that the argument was waived.