FRANK, Judge.
CZX Productions, Inc. owned a Hercules C-130 cargo airplane which crashed and was destroyed on June 10, 1991, in Angola. The plane was insured for $3,000,000 under an Aircraft All Risks Hull Insurance Policy issued by Underwriters of Lloyd’s of London. Underwriters has sought review of the summary judgment awarding the insured amount to CZX.[1] The central question is whether the events leading to creation of the coverage resulted in noneoverage because the aircraft’s destruction occurred in Angola, a geographic area claimed by Lloyd’s to be contractually excluded from the commitment. Our assessment of the pertinent relationships persuades us that the trial court’s resolution of the motion for summary judgment was in error.
Deitrieh Reinhardt, the President of CZX, communicated with CZX’s Florida insurance agent, Robert Shamberger, for the purpose of insuring the airplane. Reinhardt expressly requested that the coverage be placed on the London market. Thus, Shamberger, in turn, communicated with Don Greenway of London International Group, Incorporated, located in St. Petersburg, Florida, and requested that Greenway obtain the coverage. Greenway’s license permitted him to obtain insuranee coverage from foreign insurers including those in the London market. Green-way then communicated with Citicorp in London, the Lloyd’s broker which ultimately placed the risk on behalf of CZX with several underwriters. Greenway’s role in procuring the coverage was that of a conduit between CZX, through Shamberger, and Citicorp. Although a formal insurance policy was never issued, the coverage was evidenced by a “covernote” and related addenda. The original covernote evidencing coverage was produced by Citicorp and transmitted to Green-way. Greenway, based upon the Citicorp covernote, produced his own covernote and transmitted it to CZX via Shamberger.
Citicorp, acting on behalf of Lloyd’s, transmitted covernote K00852 to Greenway. The covernote, effective June 13, 1990, provided, inter alia, all risks hull and aviation liability protection in the agreed value of $3,000,000. The covernote expressly contemplated worldwide coverage excluding, however, the countries of Lebanon, Iran, Iraq, Sudan, Ethiopia, Liberia, Angola, and Mozambique. Thus, based upon the Citicorp covernote, Greenway produced his own covernote, designated as 06Z509-1990, and transmitted it to Shamber-ger. It, too, had an effective date of June 13, 1990, and referred to the same hull and liability coverage, but was in the lesser amount of $2,500,000 and was limited to the geographic limits of the United States. It contained no reference to the specific exclusions found in covernote K00852. Subsequently, in a document sent to Shamberger and designated “Endorsement Number 1,” Greenway corrected the amount of coverage from $2,500,000 to $3,000,000, but, “Endorsement Number 1” also failed to note the specific geographic exclusions.
On several occasions after the inception of coverage, CZX requested and paid premiums for changes in the nature and scope of coverage. Such changes were reflected through addenda produced by Citicorp and sent to Greenway and, correspondingly, through endorsements produced by Greenway and sent *708 to Shamberger. On each of the Citicorp addenda there appears the language “all other terms and conditions remain unchanged,” thus preserving the original Angolan geographic exclusion. The Angolan exclusion, however, does not appear on any documentation sent by Greenway to Shamberger until “Endorsement Number 5,” dated January 18, 1991. Shambeger and CZX argue that they never received “Endorsement Number 5” and further disavow any knowledge of the original Citicorp covernote or addenda. Likewisé, the Underwriters and Citicorp claim no knowledge of the covernote and endorsements produced by Greenway.
Greenway’s role in this matter is thus critical to the issue of whether the accident was an insured event. Ordinarily, issues of agency are to be resolved by the trier of fact and may be resolved on summary judgment only when the evidence compels one interpretation. Moore v. River Ranch, Inc., 642 So.2d 642 (Fla. 2d DCA 1994). The trial court decided the issue of Greenway’s agency, stating “CZX was led to believe ... through agencies used by the carrier that they had world wide coverage ... [which] was after the fact diminished by certain exclusions about which CZX was not informed.” The issue of Greenway’s agency, however, cannot be determined as a matter of law. Cf Blue Cross/Blue Shield of Florida, Inc. v. Weiner, 543 So.2d 794 (Fla. 4th DCA), rev. den., 553 So.2d 1164 (Fla.1989); Folwell v. Bernard, 477 So.2d 1060 (Fla. 2d DCA 1985), rev. den., 486 So.2d 595 (Fla.1986). The record does not compel a single conclusion. Rather, the issue is complicated by the idiosyncrasies of the London insurance market, see Travelers Indem. Co. v. Booker, 657 F.Supp. 280 (D.D.C.1987), and by the dispute over the delivery or nondelivery of the fifth endorsement. Hence, the issues of agency and apparent agency are not susceptible of a summary determination. Accordingly, we reverse and remand for further proceedings consistent with this opinion.
RYDER, A.C.J. and CAMPBELL, J., concur.

. The parties identified as "the Shrum parties” are CZX’s creditors. Each creditor advanced funds to overhaul the, aircraft and without the insurance proceeds they will lose their investment. CZX admitted its obligation to each creditor. The trial court entered a judgment allocating each creditor’s interest in the proceeds of the judgment obtained against Underwriters.