Teresa CUMMINGS, Plaintiff,

v.

THOMAS INDUSTRIES, INC., Defendant.

No. C91–0015–P(H).

United States District Court,
W.D. Kentucky,
Paducah Division.

Feb. 5, 1993.

**100**

Rodger W. Lofton, Paducah, KY, for plaintiff.

Paul R. Kinny, Rogers, Fuller & Pitt, Louisville, KY, Mark S. Medlin, Whitlow, Roberts, Houston & Russell, Paducah, KY, for defendant.

## MEMORANDUM OPINION

HEYBURN, District Judge.

This matter is before the Court on motion of Defendant, Thomas Industries, Inc., for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff, Teresa Cummings, seeks compensatory and punitive damages under several state law theories for the alleged wrongful denial of benefits under an employer-provided health insurance plan. Defendant removed this action from Caldwell Circuit Court asserting that this case arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a) (1982) (hereinafter "ERISA"). In support of its motion for summary judgment, Defendant argues that upon proof of liability, Plaintiff's recovery is limited to contractual damages since (1) ERISA preempts Plaintiff's state law claims that prescribe com-

pensatory and punitive damages and (2) ERISA, itself, limits recovery to benefits due under an ERISA plan. The Court will address each argument seriatim.

## I.

Plaintiff is the beneficiary of a group health insurance plan issued by Defendant, a self-insurer. The parties do not dispute that the insurance plan at issue is a welfare benefit plan within the purview of ERISA. In the Complaint, Plaintiff alleges that Defendant wrongfully denied coverage of Plaintiff's medical expenses in violation of the Kentucky Consumer Protection Act, KRS 367.110–991 and the Kentucky Unfair Claims Settlement Practices Act, KRS 304.-12–230–35. The Complaint also includes general allegations of bad faith, oppression and fraud, and anxiety and mental anguish. On the liability issue, Defendant alleges that Plaintiff's alleged medical expenses arise out of a pre-existing medical condition for which there is no coverage under the insurance plan. The subject of this motion, however, is limited to the damages issue requiring this Court to construe both the pre-emption provisions and the remedial provisions of ERISA.

## II.

At the outset, this Court defers ruling on whether ERISA pre-empts the Kentucky Consumer Protection Act due to Plaintiff's failure to state a claim thereunder. Dismissal pursuant to Rule 12(b)(6) is proper where, construing the evidence in the light most favorable to Plaintiff, there are no set of facts which Plaintiff could prove to support a claim. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Plaintiff's cause of action arises out of an alleged wrongful denial of insurance benefits. Nothing in the Kentucky Consumer Protection Act remotely applies to Plaintiff's cause of action. Indeed, Plaintiff fails to specifically allege a violation of the Act since, beyond doubt, Plaintiff simply could not recover under any provision on the facts of this case. The Court, therefore, holds that Plaintiff fails

to state a claim under the Consumer Protection Act, KRS 367.110 et seq.

 In the Complaint, Plaintiff also alleges violations of the Kentucky Unfair Claims Settlement Practices Act[1] (hereinafter the "Kentucky Act") and the common law of bad faith.[2] The issue before this Court is whether these claims fall within the sweep of ERISA's complex pre-emption provision, 29 U.S.C. § 1144(a) (1985). "[C]onspicuous for its breadth, [the pre-emption clause] establishes as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." *FMC Corp. v. Holliday*, 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). There is no dispute in this case that Plaintiff's state law claims "relate to" an employee benefit plan and, thus, fall under ERISA's express pre-emption clause, § 1144(a). The more pivotal inquiry is whether the Kentucky Act and the state common law of bad faith are not pre-empted due to the application of ERISA's savings clause, § 1144(b)(2)(A).

The savings clause provides, in relevant part, that state laws which "regulate insurance" are protected from the pre-emptive effect of the express pre-emption clause, § 1144(a). In *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Supreme Court considered whether Mississippi's common law of bad faith falls within the purview of the savings clause. In construing the savings clause, the Court conducted a three-prong analysis: (1) the "common sense" approach to discern whether a state law "regulate[s] insurance"; (2) a determination whether the subject of a state law meets the definition of the "business of insurance" analysis pursuant to the McCarran–Ferguson Act; and "most important" (3) consideration of

the exclusivity of specific remedies under ERISA's civil enforcement scheme. *Id.* at 50–57, 107 S.Ct. at 1554–1558. The Court ultimately concluded that the common law of bad faith does not "regulate insurance" within the meaning of the savings clause and, thus, held that ERISA pre-empted plaintiff's bad faith claim. *Id.* at 57, 107 S.Ct. at 1558.

The *Pilot Life* holding provides clear precedent on the issue whether ERISA pre-empts Kentucky's common law of bad faith. The common law of Mississippi and Kentucky are indistinguishable. Like Mississippi's law, the Kentucky common law of bad faith permits recovery of compensatory and punitive damages, as well as, recovery for anxiety and mental anguish. Precedent would, therefore, require pre-emption of Plaintiff's common law claim. The issue remains whether *Pilot Life* would also require pre-emption of the Kentucky Act. The Kentucky Supreme Court construes the Kentucky Act as creating a statutory bad faith claim. *State Farm Mut. Auto. Ins. Co. v. Reeder*, 763 S.W.2d 116, 118 (Ky.1988). The fact that a bad faith claimant proceeds by statute rather than at common law should not, in the Court's opinion, lead to an opposite conclusion. In the exercise of caution, however, the Court will apply the *Pilot Life* analysis, clearly the most pertinent for this Court's purposes, to determine whether the Kentucky Act falls within the savings clause, § 1144(b)(2)(A).

In its "common sense" approach, the Supreme Court determined that Mississippi's common law of bad faith, dating back to the year 1915, did not have its origin as a regulation of insurance. *Pilot Life* at 50, 107 S.Ct. at 1554. The Supreme Court determined that this is significant. Al-

---

1. Although the Kentucky Unfair Claims Settlement Practices Act is a regulatory statute that does not, in itself, provide a private remedy, the Kentucky Supreme Court held that a private right of action is cognizable by operation of KRS 446.070, which specifies a civil remedy upon the violation of a statute. *State Farm Mut. Auto. Ins. Co. v. Reeder*, 763 S.W.2d 116 (Ky. 1988).

2. The Kentucky common law of bad faith has a checkered past. Having once rejected the existence of the tort at common law, *Federal Kemper Insurance Co. v. Hornback*, 711 S.W.2d 844 (Ky.1986), the Kentucky Supreme Court reversed its "improvident" decision again permitting recovery under the common law of bad faith, *Curry v. Fireman's Fund Insurance Co.*, 784 S.W.2d 176 (1989).

though the Kentucky Act purports to regulate insurance settlement practices, it is not the traditional form of insurance regulation, which ordinarily mandates specific benefits or imposes financial and registration requirements upon insurance companies. Rather, the Kentucky Act establishes a specific code of conduct, in essence codifying general common law principles as statutory bad faith. *Reeder* at 118. As in *Pilot Life*, the first-prong "common sense" analysis does not compel a conclusion one way or another.

The McCarran–Ferguson Act analysis also yields a mixed view. First, the Kentucky Act does not spread policyholder risk for the same reasons applied to the Mississippi bad faith law. *See Pilot Life* at 50, 107 S.Ct. at 1554. Second, whether the Kentucky Act concerns the "policy relationship between the insured and the insurer" could be argued persuasively either way. *Id.* at 50–51, 107 S.Ct. at 1554–1555. However, this Court concludes that the Supreme Court's analysis of Mississippi's bad faith law is directly analogous to Kentucky's statutory bad faith law. In fact, the same can be said about the Kentucky Act as the Supreme Court concluded about Mississippi's bad faith law:

> "The common law of bad faith does not define the terms of the relationship between the insurer and the insured; it declares only that, whatever terms have been agreed upon in the insurance contract, a breach of that contract may in certain circumstances allow the policyholder to obtain punitive damages."

*Id.* at 51, 107 S.Ct. at 1555. Unlike the common law of bad faith, however, the Kentucky Legislature directed the application of the Kentucky Act primarily, if not solely, to the insurance industry.

Although the first and second prongs of the *Pilot Life* analysis provide no clear mandate for pre-emption, the Court cannot ignore the Supreme Court's lengthy and compelling argument that Congress meticulously designed ERISA's civil enforcement scheme to provide many of the same remedies and procedures cognizable under the Kentucky Act. *Id.* at 51–57, 107 S.Ct. at 1555–1558. Here, the Kentucky Act conflicts with the most specific and important of the ERISA civil enforcement provisions, § 1132(a). *Id.* at 56, 107 S.Ct. at 1557. Considering "most important, the clear expression of congressional intent that ERISA civil enforcement scheme be exclusive", *Pilot Life* at 57, 107 S.Ct. at 1558, this Court must conclude that the Kentucky Act, which establishes the standards for improper processing of claims for benefits under an ERISA plan, does not fall within the savings clause. Consistent application of the principles set forth in *Pilot Life* require this result. The Court, therefore, holds that ERISA pre-empts Plaintiff's claim under the Kentucky Unfair Claims Settlement Practices Act.[3]

### III.

■ Notwithstanding the pre-emptive effect of ERISA, Plaintiff maintains that she is entitled to extra-contractual damages pursuant to *Warren v. Society National Bank*, 905 F.2d 975 (6th Cir.1990). In *Warren*, the Sixth Circuit addressed whether an ERISA claim for a breach of fiduciary duty prescribed recovery of extra-contractual damages. The Sixth Circuit concluded that extra-contractual damages were recoverable due to the incorporation of the state law of trusts. However, in the case at bar Plaintiff's remedy is not recovery on behalf of an ERISA plan pursuant to § 1132(a)(2) but, instead, is personal recovery of benefits allegedly due under the contract pursuant to § 1132(a)(1)(B). The *Warren* case is simply inapplicable to Plaintiff's cause of action.

In *Pilot Life*, the Supreme Court analyzed the scope of ERISA's remedial provisions. *Pilot Life* at 52–56, 107 S.Ct. at 1555–1557. As in this case, the plaintiff sought extra-contractual damages for the wrongful denial of insurance benefits. *Id.* at 44, 107 S.Ct. at 1551. The Court rea-

---

3. The Court of Appeals of Kentucky also concluded, albeit in short order, that ERISA pre-empts an ERISA-plan beneficiary's claims as- serted under the Unfair Claims Settlement Practices Act. *Curry v. Cincinnati Equitable Ins. Co.,* 834 S.W.2d 701 (Ky.Ct.App.1992).

soned that to the extent state law permitted recovery of damages not available under ERISA's remedial provisions, pre-emption was a necessary conclusion due to the exclusivity of ERISA's civil enforcement scheme. *Id.* at 54, 56, 107 S.Ct. at 1556, 1557.

Regardless of the analytical basis for a finding of pre-emption, the issue whether ERISA limits Plaintiff to contractual damages is straightforward. Courts should follow the plain words of the statute to effectuate the expressed intent of Congress. *See, e.g. United States v. Oregon,* 366 U.S. 643, 648, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575 (1961). ERISA's remedial provision provides that a plan beneficiary may "recover benefits due" or "obtain other appropriate equitable relief." 29 U.S.C. § 1132(a). The plain language of the statute excludes punitive damages and other compensatory damages for anxiety and mental anguish. "The six carefully integrated civil enforcement provisions found in [ERISA] provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985) (emphasis in original). The Court, therefore, holds that Plaintiff's recovery is limited to the benefits allegedly due under the insurance policy, and depending on the proof that develops, Plaintiff may seek to recover attorney fees pursuant to § 1132(g).