The FB INSURANCE COMPANY, Kentucky Farm Bureau Mutual Insurance Company, Jay Brown and Bruce Hendrix, Appellants,

v.

Charles JONES and wife, Linda Jones, Appellees.

No. 92–CA–001832–MR.

Court of Appeals of Kentucky.

July 16, 1993.

Discretionary Review Denied by Supreme Court Dec. 15, 1993.

Al Miller, Central City, for appellants.

Brent Yonts, Greenville, for appellees.

Before EMBERTON, JOHNSON and MILLER, JJ.

JOHNSON, Judge.

This case involves a dispute over a home-owner's insurance policy in which the trial court entered judgment for the plaintiff homeowners (Charles and Linda Jones). Defendants (hereinafter Farm Bureau) appeal. The issues on appeal are whether the trial court erred in its construction of the replacement value clause of the insurance contract; whether the trial court erred by instructing the jury that it could award damages not specifically provided for by the Unfair Claims Settlement Practices Act, KRS 304.12–230; and whether the trial court erred in limiting the number of expert witnesses. We hold that the trial court did not err in any of the above matters and affirm its judgment.

I.

The Joneses' house burned on December 23, 1989. Farm Bureau was notified of the loss immediately, and it made some payments to cover living expenses and personal property losses. At some point, Farm Bureau also paid off the Joneses' mortgage in the amount of $85,277.34. In May 1990, approximately five months after the loss, the Joneses submitted two estimates to Farm Bureau for the cost of repairing the house. In June 1990, Farm Bureau tendered and then withdrew two checks in settlement of the Joneses' claims; it appears that those checks would have covered the replacement cost of the Joneses' house and personal property. The Joneses filed suit in December 1990, and Farm Bureau raised the defense of arson. After a jury trial, judgment was entered in favor of the Joneses. In accord with the jury's verdict, the trial court held that the Joneses were entitled to the cash value of the house and its contents. This was, of course, less than the replacement cost of those items. However, the trial court also held that, if the Joneses rebuilt the house and replaced the destroyed personal property within six months of the payment of the cash value of the lost property, then they were entitled to recover the total replacement cost of the property. The house has not yet been rebuilt. The Joneses purchased another home shortly after trial.

On appeal, Farm Bureau argues that the trial court erred in holding that the Joneses were entitled to recover the replacement cost of the property. Farm Bureau contends that under the provisions of the insurance policy the Joneses are entitled only to the actual cash value of the property—i.e. replacement cost minus depreciation. The relevant provisions of the insurance contract are as follows:

3. Loss Settlement. Covered property losses are settled as follows:

a. (1) Personal property:

(2) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings, and

(3) Structures that are not buildings:

at actual cash value at the time of loss but not more than the amount required to repair or replace.

b. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

(1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

(a) the limit of liability under this policy that applies to the building;

(b) the replacement cost of that part of the building damaged for like construction and use on the same premises; or

(c) the necessary amount actually spent to repair or replace the damaged building.

. . . .

(4) We will pay no more than the actual cash value of the damage unless:

(a) actual repair or replacement is complete; or

(b) the cost to repair or replace the damage is both;

(i) less than 5% of the amount of insurance in this policy on the building; and

(ii) less than $1000.

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to building on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability on a replacement cost basis.

Farm Bureau asserts that the trial court erred in holding that under the foregoing provisions the Joneses may recover the replacement cost of their home without having actually rebuilt it. Farm Bureau's arguments are misdirected, however. The trial court clearly held that the Joneses could not recover the full replacement cost of their home *unless* they actually rebuilt it. Further, the court held that the Joneses could not recover the full replacement cost *until after they had replaced the house.* The Joneses have not appealed, therefore the question of whether Farm Bureau could be compelled to pay full replacement costs before actual replacement occurred is not before this Court. *Cf.* Randy R. Koenders, Annotation, *Construction and Effect of Property Insurance Provision Permitting Recovery of Replacement Cost of Property,* 1 A.L.R.5th 817 (1992). The only real issue is whether the trial court erred to Farm Bureau's prejudice by holding that the Joneses are entitled to recover full replacement costs if they rebuild within six months of receiving payment for cash value. *Cf.* 1 A.L.R.5th, *supra,* §§ 3–5. It could be argued that clause 3b(5) of the contract provides replacement value coverage only where the house is rebuilt within 180 days of loss. On the other hand, the same clause can also be read as providing that if the homeowner demands replacement coverage within 180 days of loss, as was done in this case, then the homeowner must be given a reasonable time in which to rebuild—and in any event need not rebuild before he has received payment for the actual cash value of the loss.

The proper standard for the analysis of insurance contracts in Kentucky is a subjective one. *Fryman v. Pilot Life Insur-*

*ance Company,* Ky., 704 S.W.2d 205 (1986) holds that terms of insurance contracts have no technical meaning in law and are to be interpreted according to the usage of the average man and as they would be read and understood by him in the light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured.

*Brown Foundation v. St. Paul Insurance Co.,* Ky., 814 S.W.2d 273, 279 (1991).

If the contract has two constructions, the one most favorable to the insured must be adopted. *Louisville Gas & Electric v. American Insurance Company,* 412 F.2d 908 (6th Cir., 1969). If the contract language is ambiguous, it must be liberally construed to resolve any doubts in favor of the insured. *Davis v. American States Insurance,* Ky.App., 562 S.W.2d 653 (1977).

*Wolford v. Wolford,* Ky., 662 S.W.2d 835, 838 (1984).

In light of these cases, the only acceptable construction of the contract in the case sub judice is that—so long as a claim is asserted within 180 days of loss—the homeowners are not required to rebuild their house until they receive payment of the actual cash value from their insurer. *See also* 1 A.L.R.5th, *supra,* § 5. Where a lawsuit is required for collection of the cash value, the homeowner may reasonably wait until his rights have been determined before undertaking the obligations of rebuilding. *Cf. McCahill v. Commercial Union Insurance Co.,* 179 Mich.App. 761, 446 N.W.2d 579 (1989). The contract at issue here does not explicitly require that the damaged home be replaced within 180 days of loss. The contract requires only that a *claim* be made within 180 days of loss. *See* 1 A.L.R.5th, *supra,* § 5. That being so, it follows that the trial court did not err to Farm Bureau's prejudice in holding that the Joneses were entitled to recover replacement costs if they rebuilt their house.[1]

---

1. For a comprehensive discussion of replacement cost policies, see *Higgins v. Insurance Company of North America,* 256 Or. 151, 469 P.2d 766, 772–774 (1970).

## II.

The next question is whether the trial court erred in instructing the jury that damages could be awarded for anxiety, mental anguish, and loss of consortium under KRS 304.12–230.

The right of a private citizen to maintain an action for violation of the Unfair Claims Practices Act is clearly supported by KRS 446.070 which provides:

A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation although a penalty or forfeiture is imposed for such violation.

*State Farm Mutual Automobile Insurance Co. v. Reeder,* Ky., 763 S.W.2d 116, 117 (1988). Farm Bureau argues that the foregoing passage has been nullified by the passage of KRS 304.12–235. Farm Bureau cites *Grzyb v. Evans,* Ky., 700 S.W.2d 399 (1985), for the proposition that where a remedy is provided in a statute, the aggrieved party is limited to that statutory remedy. In this case, Farm Bureau contends that the Joneses should be limited to the interest and attorneys' fees provided in KRS 304.12–235. The problem with this contention is that KRS 304.12–230 and KRS 304.12–235 are different statutes which address different kinds of culpable behavior. Both of these statutes and the *Grzyb* decision were in effect when the *Reeder* decision was handed down. KRS 304.12–235 appears to be intended as a prod to prevent laxity in the adjustment of claims. KRS 304.12–230, however, speaks out against more egregious behavior. The acts listed in the statute have the character of intentionally tortious acts. The Legislature might easily believe that one damaged by such actions should receive damages as provided by KRS 446.070. We hold that the trial court did not err in its instructions to the jury.

## III.

The final issue is whether the trial court erred in prohibiting a deputy state fire marshall from testifying as an expert for Farm Bureau. It appears that during the noon recess on the third day of trial, the court decided to prohibit any further expert testimony on behalf of Farm Bureau. At that point in the trial, Farm Bureau had procured lengthy and repetitive testimony from three different arson investigators and at least one of their assistants. The court held that any further testimony would be cumulative and useless.

Whether or not the trial court abused its discretion in so ruling has not been preserved for appellate review. There was no avowal as to what the proposed witness would have said if allowed to testify. That being so, the court's ruling is not reviewable. *Freeman v. Elam,* Ky., 372 S.W.2d 796 (1963). In fact, Farm Bureau's counsel stated his need for the witness as follows:

Jack Flowers from the State Fire Marshal Office was to be here. He had examined the photographs that have been entered into evidence and he was prepared to go to the scene but the court declined a motion to allow him to go to the scene.

We will just say that we needed him as a witness. Thank you, Your Honor.

The present state of the law on what constitutes an adequate avowal may be unclear. *Cf. Hebert v. Commonwealth,* Ky. App., 566 S.W.2d 798, 803 (1978) (avowal must be made by witness rather than by counsel); CR 43.10; KRE 103; Lawson, *Kentucky Evidence Law Handbook* § 1.10 (3rd ed. 1993) (KRE 103(a) "can easily be construed as allowing the use of avowals by counsel to preserve errors for review"). But in any event, an avowal must be such as to inform the courts as to *what* the witness would say. In a case where testimony is excluded as being cumulative, the offering party ought to tell the court why the testimony is *not* cumulative. The case sub judice bears no resemblance to *Underhill v. Stephenson,* Ky., 756 S.W.2d 459 (1988) (a case of palpable error where exclusion of testimony was held to be erroneous even though no avowal was made), or *United Fuel Gas Co. v. Mauk,* Ky., 272 S.W.2d 810 (1954) (exclusion was error even though a technically inadequate avowal was made).

Even if Farm Bureau's avowal was adequate to preserve the issue for review, it cannot be said that the trial court abused its discretion in excluding the fire marshall's

testimony. It has long been true that "[r]elevant evidence may be excluded if its probative worth is outweighed by considerations of judicial economy." Lawson, *The Kentucky Evidence Law Handbook* § 2.00 (2d ed. 1984); *cf.* KRE 403; *Lawson* (3rd ed. 1993). As noted previously, Farm Bureau put on testimony from several experts; all testified on the same issue. It is not suggested that the substance of the fire marshall's testimony would have differed in any detail from the testimony of the other experts. Nevertheless, Farm Bureau asserts that this expert was particularly important because he was more believable and less biased than the others. We find this argument unconvincing. The fire marshall had not visited the scene of the fire; his testimony was to be based on photographs taken by others.

We affirm the judgment of the circuit court.

All concur.