Randall BONNELL, Plaintiff,

v.

**BANK OF AMERICA and Metropolitan Life Insurance Company, Defendants.**

No. 03–2221–JWL.

United States District Court,
D. Kansas.

Sept. 30, 2003.

Steven A. Ediger, Kansas City, MO, for Plaintiff.

Ann E. Buckley, Armstrong Teasdale LLP–St. Louis, St. Louis, MO, Karrie J. Clinkinbeard, Armstrong Teasdale LLP–Kansas City, Kansas City, MO, for Defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff Randall Bonnell brought this action seeking a determination of his rights to past and future benefits under the terms of a long-term disability plan sponsored by his employer, defendant Bank of America (the "bank"). Defendant Metropolitan Life Insurance Company ("MetLife") is the insurer and claims administrator of the plan. This matter is presently before the court on MetLife's motion to dismiss (Doc. 14) and motion to strike jury demand (Doc. 12). For the reasons explained below, MetLife's motions are granted.

## FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit arises from a dispute regarding the amount of benefits due to plaintiff under the terms of a long-term disability plan. Plaintiff alleges that he began working for the bank as an investment advisor (i.e., stockbroker) on June 8, 2000. At all relevant times, he participated in the bank's group benefits program. One component of this program was a long-term disability plan that MetLife insured and administered.

Plaintiff stopped working during the first week of October 2000. He was diagnosed with disabling fibromyalgia due to fatigue, pain, and loss of concentration. He tried to work during the winter and spring of 2001, but was unable to perform his job as an investment advisor because of his disability. On October 1, 2001, he stopped working entirely. Prior to this time, he had received short-term disability benefits under a different plan. In October of 2001, he applied for long-term disability benefits under the MetLife long-term disability plan.

On December 20, 2001, MetLife denied plaintiff's application for long-term disability benefits. Plaintiff appealed this denial of benefits, and MetLife reversed its decision. MetLife awarded plaintiff long-term disability benefits, but only in the amount of $2,000 per month commencing in October 2001. On August 8, 2002, plaintiff wrote to MetLife and the bank, and provided both of them with his income records. MetLife then adjusted his monthly benefits to $6,107. Plaintiff again appealed, arguing that this amount still did not accurately reflect his basic monthly earnings as of October 2000, which is when plaintiff alleges he became disabled. MetLife denied the appeal, stating that it was simply using the income figures the bank provided to MetLife as of October 2001. The bank also denied the appeal, stating that MetLife had determined plaintiff's date of disability was October 1, 2001, and therefore the bank only provided MetLife

with plaintiff's income figures relevant to that date of disability.

The date plaintiff became disabled is significant because the long-term disability plan calls for plaintiff's benefits to be based on his "basic monthly earnings." Basic monthly earnings are calculated by averaging his earnings for the twelve-month period preceding the date he became disabled, or, if he was not employed by the bank for twelve months prior to the date he became disabled, then by averaging his monthly earnings during the period of time he was employed by the bank. As an investment advisor, plaintiff was a commissioned employee. From June 2000 to October 2000, his earnings averaged approximately $15,000 per month, whereas his monthly earnings from October 2000 to October 2001 were significantly less, presumably because his disability impaired his ability to function and, consequently, to earn commissions.

On December 5, 2002, MetLife ordered plaintiff to attend an independent medical examination. On April 17, 2003, MetLife reviewed plaintiff's records and recommended that he undergo yet another independent medical examination. On April 23, 2003, MetLife wrote to plaintiff directing him to undergo a psychological examination.

In Count One of plaintiff's amended complaint, he seeks a determination of his rights to past and future benefits under the long-term disability plan pursuant to 29 U.S.C. § 1132, a provision of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). In Count Two, plaintiff alleges violations of the Kentucky unfair claims settlement practices statute, Ky.Rev.Stat. § 304.12–230 (the "Kentucky Act").[1] In

Count Three, plaintiff asserts a state common law claim for tortious interference with contract. In Count Four, plaintiff alleges violations of the Kansas unfair claims settlement practices statute, K.S.A. § 40–2404 (the "Kansas Act").[2] Count Five seeks civil penalties under ERISA for the bank's failure to timely provide plaintiff with certain requested information. Count Six prays for equitable relief under ERISA enjoining defendants from requiring plaintiff to submit to further medical evaluations.

MetLife argues that Counts Two, Three, and Four should be dismissed because they are preempted by ERISA. Plaintiff concedes that his tortious interference claim is preempted by ERISA, but argues that the Kentucky and Kansas Acts regulate insurance and, therefore, his claims under those statutes are saved from preemption.

## MOTION TO DISMISS STANDARD

The court will dismiss a cause of action for failure to state a claim only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief," *Poole v. County of Otero*, 271 F.3d 955, 957 (10th Cir.2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir.2001). The issue in resolving a motion such as this is "not

1. MetLife's claims adjuster was located in Kentucky, hence Count Two asserts violations of the Kentucky Act.

2. MetLife operates in Kansas, MetLife is subject to Kansas insurance laws, and plaintiff is a resident of Kansas, hence Count Four asserts violations of the Kansas Act.

whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quotation omitted).

## DISCUSSION

As explained below, plaintiff's claims under the Kentucky Act are preempted by ERISA because the remedies available to plaintiff under that statute conflict with the remedies available under ERISA. Plaintiff concedes that his tortious interference claim is preempted by ERISA. Plaintiff's claims under the Kansas Act would meet with the same fate as his claims under the Kentucky Act if the Kansas Act provided plaintiff with a private cause of action. However, the Kansas Act does not provide a private cause of action. For these reasons, defendant's motion to dismiss is granted.

### A. The Kentucky Act (Count Two)

"ERISA comprehensively regulates, among other things, employee welfare benefit plans that, 'through the purchase of insurance or otherwise,' provide medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability, or death." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (quoting 29 U.S.C. § 1002(1)). To facilitate that comprehensive regulation, ERISA preempts any state law that "relate[s] to any employee benefit plan." 29 U.S.C. § 1144(a). It is undisputed that plaintiff's claims under the Kentucky Act "relate to" an employee benefit plan, and therefore fall under ERISA's express preemption clause.

Plaintiff, however, argues that his claims under the Kentucky Act are saved from preemption by virtue of ERISA's savings clause, which saves from preemption those state laws that specifically "regulate insurance." 29 U.S.C. §§ 1144(b)(2)(A). The Supreme Court has recently set forth a new two-part test for determining whether a state law "regulates insurance" and is, therefore, saved from ERISA's preemptive effect. This two-part test requires the state law to: (1) "be specifically directed toward entities engaged in insurance"; and (2) "substantially affect the risk pooling arrangements between the insurer and the insured." *Ky. Ass'n of Health Plans, Inc. v. Miller*, —— U.S. ——, 123 S.Ct. 1471, 1479, 155 L.Ed.2d 468 (2003). If this two-part inquiry reveals that the state law regulates insurance, then the state law is saved from preemption. "This does not, however, end [the] preemption analysis." *Conover v. Aetna U.S. Health Care, Inc.*, 320 F.3d 1076, 1078 (10th Cir.2003).

"A state law otherwise regulating insurance ... may still be preempted if it allows plan participants and beneficiaries 'to obtain remedies under state law that Congress rejected in ERISA.'" *Conover*, 320 F.3d at 1078 & n. 2 (quoting *Pilot Life*, 481 U.S. at 54, 107 S.Ct. 1549, and *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 377, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002)). Under ERISA's six civil enforcement provisions, a plan participant or beneficiary may bring a civil action to recover benefits due, enforce rights, clarify future benefits, enforce provisions of the plan or ERISA, enjoin or redress violations of ERISA, or remove the fiduciary for breach of fiduciary duty, and the court has discretion under any of the civil enforcement provisions to award attorneys' fees and costs to either party. *Id.* at 1078–79. It is well settled that "these civil enforcement provisions are 'exclusive.'" *Id.* at 1079 (quoting *Pilot Life*, 481 U.S. at 52, 54, 107 S.Ct. 1549). Therefore, a state law is preempted if it adds to the judicial remedies available under ERISA. *Id.* (citing

*Rush Prudential,* 536 U.S. at 379, 122 S.Ct. 2151).

■ The Kentucky Act essentially creates a statutory bad faith claim. *Cummings v. Thomas Industries, Inc.,* 812 F.Supp. 99, 101 (W.D.Ky.1993) (citing *State Farm Mut. Auto. Ins. Co. v. Reeder,* 763 S.W.2d 116, 118 (Ky.1988)). A plaintiff may recover "such damages as he sustained by reason of the violation" of the Act. Ky.Rev.Stat. § 446.070. The plain language of this statute permits, at a bare minimum, compensatory damages. In addition, a plaintiff can recover damages for anxiety and mental anguish. *FB Ins. Co. v. Jones,* 864 S.W.2d 926, 929 (Ky.Ct.App. 1993) (holding the trial court did not err by instructing the jury that the plaintiff could be awarded damages for anxiety, mental anguish, and loss of consortium for a violation of the Kentucky Act). By comparison, ERISA limits plaintiff's damages for Met-Life's alleged improper processing of plaintiff's benefits claim to "benefits due ... under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The Kentucky Act therefore "allows plan participants 'to obtain remedies ... that Congress rejected in ERISA.'" *Rush Prudential,* 536 U.S. at 377, 122 S.Ct. 2151 (quoting *Pilot Life,* 481 U.S. at 54, 107 S.Ct. 1549). Accordingly, plaintiff's claims under the Kentucky Act are preempted by ERISA. *See, e.g., Dearing v. Cont'l Assur. Co.,* 1993 WL 4168, at *2 (W.D.Ky. Jan.6, 1993) (holding claims under the Kentucky Act were preempted because "the Kentucky Act conflicts with the most specific and important of the ERISA civil enforcement provisions"); *Cummings v. Thomas Indus., Inc.,* 812 F.Supp. 99, 102 (W.D.Ky.1993) (same); *Curry v. Cincinnati Equitable Ins. Co.,* 834 S.W.2d 701 (Ky.Ct.App.1992) (holding claims under the Kentucky Act were preempted because they conflicted with ERISA's civil enforcement scheme); *see also, e.g., Elliot v. Fortis Benefits Ins. Co.,* 337 F.3d 1138, 1147–48 (9th Cir.2003)

(holding claims under the Montana unfair trade practices statute were conflict-preempted because the Montana law provided non-ERISA damages for essentially claim processing causes of action); *Fink v. Dakotacare,* 324 F.3d 685, 689 (8th Cir. 2003) (holding claims under the South Dakota unfair insurance practices statute were preempted because the South Dakota statute provided a state judicial remedy).

Plaintiff argues that the Kentucky Act "regulates insurance" under the new legal standard announced by the Supreme Court in *Miller.* However, while *Miller* announced a new legal standard for determining whether a state law regulates insurance for purposes of ERISA's savings clause, *Miller* involved an "any willing provider" statute, not a state judicial remedy for a claims processing cause of action. Thus, *Miller* did not modify the body of case law regarding so-called "conflict preemption" in which a state law adds to the judicial remedies available under ERISA. *See Elliot,* 337 F.3d at 1147 (holding the conflict preemption principle announced in *Pilot Life* and clarified in *Rush Prudential* remains in force); *see also, e.g., Nguyen v. Healthguard of Lancaster, Inc.,* 282 F.Supp.2d 296, 306, 2003 WL 22100157, at *8 (E.D.Pa. Aug.14, 2003) (applying conflict preemption principles after *Miller*). The court is not inclined to engage in a detailed analysis of whether the Kentucky Act regulates insurance within the meaning of ERISA's savings clause under the new legal standard announced in *Miller,* *see, e.g., Nguyen,* 296 F.Supp.2d at 305, 2003 WL 22100157, at *7 (observing that "*Miller* does not provide much guidance in construing the meaning of the test it announces"), when it is patently clear that, regardless of the outcome of that inquiry, plaintiff's claims under the Kentucky Act are conflict preempted under a well-estab-

lished body of case law that dates back to 1987.

### B. Plaintiff's Tortious Interference Claim (Count Three)

In plaintiff's response to MetLife's motion to dismiss, plaintiff concedes that his tortious interference claim is preempted by ERISA. Therefore, MetLife's motion to dismiss is granted as unopposed insofar as it relates to plaintiff's tortious interference claim. *See also, e.g., Sundown Ranch, Inc. v. John Alden Life Ins. Co.,* No. 3:01–CV–1445, 2003 WL 21281642, at *2 (N.D.Tex. May 29, 2003) (holding a tortious interference claim was preempted by ERISA because it did not meet the legal standard announced by the Supreme Court in *Miller* in order for it to regulate insurance within the meaning of ERISA's savings clause).

### C. The Kansas Act (Count Four)

■ The Kansas Act, K.S.A. § 40–2404(9), is almost identical to the Kentucky Act, and therefore plaintiff's claims based on that statute would also be preempted by ERISA if the Kansas Act provided plaintiff with a remedy for MetLife's alleged improper processing of plaintiff's long-term disability benefit claim. However, the Kansas Act does not provide plaintiff with any remedy at all. The commissioner of insurance has the exclusive power to enforce the Kansas Act. *See, e.g.,* K.S.A. §§ 40–2405 (giving the commissioner authority to examine and investigate insurers to determine whether they have engaged in unfair claim settlement practices), 40–2406 (giving the commissioner authority to charge insurance companies with violations and conduct hearings with respect to those charges), 40–2407 (giving the commissioner authority to issue cease and desist orders, impose fines, suspend or revoke insurers' licenses, direct insurers to financially redress injuries, and notify the public of violations), 40–2411 (giving the commissioner authority to impose further penalties if an insurer violates a cease-and-desist order), 40–2412 (referring to the "powers vested in the commissioner by this act"). The Kansas Act does not provide a private cause of action. *See Earth Scientists (Petro Servcs.) Ltd. v. U.S. Fid. & Guar. Co.,* 619 F.Supp. 1465, 1468–72 (D.Kan.1985) (thoroughly considering this issue, recognizing that analogous statutes in some states provide a private right of action whereas others do not, and holding the Kansas Act does not provide a private cause of action). Thus, plaintiff has no claim under the Kansas Act and, even if he did, it would be preempted by ERISA for the same reasons explained above with respect to the Kentucky Act.

### METLIFE'S MOTION TO STRIKE JURY DEMAND

■ Lastly, the court will address MetLife's motion to strike plaintiff's jury demand (Doc. 12). Plaintiff has failed to timely respond to that motion, and it is therefore granted as unopposed. *See* D. Kan. Rules 6.1(e), 7.4 (setting forth response deadlines and providing that uncontested motions will ordinarily be granted without further notice). The court further notes that plaintiff's remaining claims are all ERISA claims, and it is well settled that he is not entitled to a jury trial on those claims. *Adams v. Cyprus Amax Minerals Co.,* 149 F.3d 1156, 1162 (10th Cir.1998). Accordingly, MetLife's motion is granted and the court hereby strikes plaintiff's demand for a jury trial.

IT IS THEREFORE ORDERED BY THE COURT that defendant's motion to dismiss (Doc. 14) is granted. Accordingly, Counts Two, Three, and Four of plaintiff's amended complaint are hereby dismissed.

IT IS FURTHER ORDERED BY THE COURT that defendant's motion to

strike plaintiff's jury demand (Doc. 12) is granted.